IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY MARYLAND

The Humane Society of the United States :
700 Professional Drive :
Gaithersburg, MD 20879 : No.
:
Jonathan Lovvorn, :
3906 Jefferson St. :
Hyattsville, MD 20781 : **JURY TRIAL DEMANDED**
:
Kimberly Ockene :
131 Windermere Rd. :
Auburndale, MA 02466 :
:
     Plaintiffs, :
:
     v. :
:
:
National Union Fire Insurance Company of :
Pittsburgh, PA :
175 Water Street :
New York, NY 10038 :
:
:
Serve on: :
National Union Fire Insurance Company of :
Pittsburgh, PA :
c/o Maryland Insurance Administration :
Designated Agent :
200 Saint Paul Place, Suite 2700 :
Baltimore, MD 21202 :
:
     Defendant. :

**RECEIVED**

MAY 2 1 2013

Clerk of the Circuit Court
Montgomery County, Md.

## COMPLAINT

Plaintiffs The Humane Society of the United States ("HSUS"), Jonathan Lovvorn

("Lovvorn"), and Kimberly Ockene ("Ockene") (collectively "Plaintiffs") by and through their

respective undersigned attorneys, bring this action for relief against National Union Fire

Insurance Company of Pittsburgh, PA ("National Union") for breach of contract and for a

declaratory judgment pursuant to the Maryland Uniform Declaratory Judgments Act, § 3-406 of

1

the Courts & Judicial Proceedings Article.  In support of those claims, Plaintiffs allege as

follows:

## INTRODUCTION

This lawsuit seeks to hold the Defendant accountable for its sustained efforts to withhold

from HSUS and its employees the insurance benefits for which HSUS contracted.  These efforts

constitute a breach or breaches of contract by National Union.

## PARTIES

1.     Plaintiff The Humane Society of the United States is a national nonprofit

charitable organization conducting activities throughout the United States. HSUS is incorporated

in Delaware and maintains its principal place of business in Gaithersburg, Montgomery County,

Maryland.  It is dedicated to protecting animals.

2.     Plaintiff Jonathan Lovvorn is an employee of HSUS and Senior Vice President for

Animal Protection Litigation & Investigations, and also serves as Chief Counsel to the Animal

Protection Litigation section of the HSUS.  Prior to joining HSUS in 2005, Mr. Lovvorn worked

at Meyer Glitzenstein & Crystal, in Washington, D.C.  Mr. Lovvorn was a counsel of record in

the ESA Litigation identified and discussed, *infra.*

3.     Plaintiff Kimberly Ockene is an employee of HSUS and Senior Attorney in the

Animal Protection Litigation department at HSUS.  Prior to joining HSUS in November, 2008,

Ms. Ockene worked at Meyer Glitzenstein & Crystal, in Washington, D.C.  Ms. Ockene was a

counsel of record in the ESA Litigation identified and discussed, *infra.*

4.     Defendant National Union Fire Insurance Company of Pittsburgh, PA is a

Pennsylvania corporation that maintains its principal place of business at 175 Water Street, New

York, New York.  National Union is licensed to sell and does regularly sell insurance and do business in the State of Maryland and in Montgomery County.

## JURISDICTION AND VENUE

5.      This Court has personal jurisdiction over the Defendant pursuant to Maryland Code, §§ 6-103(b)(1), (b)(2), and (b)(6) of the Courts & Judicial Proceedings Article ("CJP") insofar as this action arises from Defendant's transaction of business with HSUS at HSUS's offices in Gaithersburg, Montgomery County, Maryland, and relates to the contract for the provision of insurance by Defendant to HSUS, and because Defendant regularly engages in business in the State of Maryland.

6.      Venue is proper in this Court under CJP § 6-201(a) because Defendant's acts and omissions flow from an insurance contract or series of insurance contracts that were, in whole or in part, negotiated, executed, and delivered in Montgomery County, Maryland.

## FACTS COMMON TO ALL COUNTS

7.      This lawsuit seeks the resolution of an insurance coverage dispute between the Plaintiffs, a national nonprofit charitable organization dedicated to protecting animals and two of its employees, and their insurer National Union.

8.      HSUS purchased insurance from National Union through BB&T, an insurance broker.

9.      National Union issued to HSUS a Management Liability, Professional Liability, Crime Coverage and Kidnap and Ransom/Extortion Coverage for Non Profit Organizations: Policy No. 01-932-56-98, for the policy period June 1, 2009 to June 1, 2010 ("the Policy").  The Policy includes, among other coverages, a coverage part entitled "AIG Executive Liability –

Not-for-Profit Risk Protector" Coverage, also referred to in the Policy as the "D&O Coverage Section." It provides $20,000,000 in insurance protection for the Organization and Individual Insureds, as defined below.

10.     The Policy provides for insurance coverage for loss that arises out of the conduct of HSUS and its directors, officers, and employees.

11.     The Policy includes coverage for employees for individual insured loss, as defined by the Policy, arising from a claim during the policy period.

12.     The Policy was designed to protect HSUS and its directors, officers, and employees from certain risks of loss. Those risks included risks arising out of their nonprofit work on behalf of animals, which included litigation, legislative and lobbying efforts, humane education and public awareness campaigns, and, in part through its affiliates, owning and operating animal sanctuaries and wildlife rehabilitation centers on a nationwide basis.

13.     Upon information and belief, National Union delivered the Policy to HSUS at HSUS's office in Gaithersburg, Maryland.

14.     HSUS paid the premiums due for the Policy to National Union in a timely manner by check mailed or funds wired from its principal place of business in Gaithersburg, Maryland.

## THE INSURANCE POLICY PROVISIONS

15.     The term of the Policy is from June 1, 2009, to June 1, 2010.

16.     The Policy provides as follows:

    a.  "Coverage A: Individual Insured Insurance," which provides that: "This Policy
        shall pay on behalf of each and every Individual Insured Loss arising from a
        Claim first made against such Individual Insured during the Policy Period...,
        and reported to the Insurer pursuant to the terms of this policy for any actual

4

or alleged Wrongful Act of such Individual Insured, except when and to the extent that the Organization has indemnified the Individual Insured. The Insurer shall, in accordance with and subject to Clause 5 of this Coverage Section, advance Defense Costs of such Claim prior to its final disposition";

b. "Coverage B: Organization Indemnification Reimbursement Insurance," which provides that "[t]his policy shall pay on behalf of the Organization Loss arising from a Claim first made against an Individual Insured during the Policy Period or the Discovery Period (if applicable) and report to the Insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act of such Individual Insured, but only when and to the extent that the Organization has indemnified such Individual Insured for such Loss pursuant law, common or statutory, or contract or the Charter or By-laws of the Organization duly effect under such law which determines and defines such rights of indemnity. The Insurer shall, in accordance with and subject to Clause 5 of this Coverage Section, advance Defense Costs of such Claim prior to its final disposition."

c. "Coverage C: Organization Entity Coverage," which provides that: "This Policy shall pay on behalf of the Organization Loss arising from a Claim first made against the Organization during the Policy Period..., and reported to the Insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act of the Organization. The Insurer shall, in accordance with and subject to Clause 5 of this Coverage Section, advance Defense Costs of such Claim prior to its final disposition."

17.    The Policy includes the following definitions and terms relevant to this dispute:

5

a. "Claim" means "(1) a written demand for monetary, non-monetary or injunctive relief...; or (2) a civil, criminal, regulatory or administrative proceeding for monetary, non-monetary or injunctive relief which is commenced by: (i) service of a complaint or similar pleading;..."

b. "Individual Insured" means "a past, present or future.... director, officer,... department head,... Employee of the Organization."

c. "Employee" means "any past, present or future..., employee of the Organization..."

d. "Organization" means "(1) the Named Organization; (2) any Subsidiary thereof; and (3) any Affiliate thereof listed by endorsement to this policy...."

e. The Named Organization designated in Item 1 of the Declarations is HSUS.

f. "Loss" means "damages, judgments, settlements, pre- and post-judgment interest, Defense Costs and Crisis Management Loss...."

g. "Wrongful Act" means "(1) with respect to Individual Insureds, any breach of duty, neglect, error, misstatement, misleading statement, omission or act by such Insureds in his/her respective capacities as such, or any matter claimed against such Individual Insured solely by reason of his/her status as an Individual Insured of the Organization; (2) with respect to the Organization under Coverage C, any breach of duty, neglect, error, misstatement, misleading statement, omission or act by or on behalf of the Organization."

h. "Defense Costs" means "reasonable and necessary fees, costs and expenses consented to by the Insurer ... resulting solely from the investigation, adjustment, defense and appeal of a Claim against the Insureds...."

i. "Insured" means "the Organization and all Individual Insureds."

## THE ESA LITIGATION AND THE FELD LITIGATION

18.     In 2000 and 2003, The Fund For Animals, a separate corporate entity that would later become associated with HSUS—along with the American Society for the Prevention of Cruelty to Animals and other co-plaintiffs—brought lawsuits against Feld Entertainment, Inc. ("Feld Entertainment"), alleging violations of the Endangered Species Act based on Feld Entertainment's treatment of elephants (collectively "the ESA Litigation").

19.     Thereafter, in August 2007, Feld Entertainment responded by suing The Fund For Animals and the other nonprofit groups that had brought the ESA Litigation. Feld Entertainment claimed that these groups had committed RICO violations and violations of state law in a conspiracy against Feld Entertainment (the "2007 Feld Lawsuit"). HSUS, Lovvorn, and Ockene were not named as parties to the 2007 Feld Lawsuit.

20.     The 2007 Feld Lawsuit was stayed from November 2007 to December 2009, while the ESA Litigation was pending.

21.     In December 2009, after a non-jury trial in February and March of 2009, the Court entered a judgment in favor of Feld Entertainment in the ESA Litigation on the ground that the plaintiffs lacked standing. At that time, the stay on the 2007 Feld Lawsuit was lifted.

22.     In February 2010, Feld Entertainment amended its 2007 complaint and, for the first time, named HSUS and two of its employees, Jonathan Lovvorn and Kimberly Ockene, as additional defendants. Feld Entertainment also added several other claims, including state law claims for malicious prosecution and abuse of process, among other claims, in addition to the alleged RICO violations (the "2010 Feld Lawsuit") (collectively with the 2007 Feld Lawsuit, the "Feld Litigation").

7

23.     Subsequent to receipt of the First Amended Complaint, Plaintiffs made a claim for National Union to provide insurance coverage. Specifically, on March 1, 2010, HSUS provided formal notice of the Feld Litigation by letter enclosing a copy of the Amended Complaint in the Feld Litigation to National Union through insurance broker BB&T Insurance and sought coverage for insured parties, including all three Plaintiffs in this action.

24.     On May 26, 2010, Chartis, the administrator handling these claims on behalf of National Union, sent a coverage disclaimer letter to HSUS's General Counsel, stating "that there is no coverage for this claim, based on the Insureds' failure to provide notice during the policy period."

25.     The insured parties and National Union exchanged further correspondence during 2010; National Union, however, maintained its denial of coverage.

26.     The filing of the 2010 Feld Lawsuit against HSUS, Lovvorn, and Ockene constituted a Claim under the Policy that occurred during the Policy Period.

27.     National Union's refusal to provide insurance coverage under the Policy constitutes a breach of contract, is without basis, and violates the law.

28.     Plaintiffs are now required to defend themselves in the Feld Litigation without the benefit of the insurance that HSUS (and its affiliates) purchased from Defendant National Union to protect them.

29.     The National Union Policy defines the term "Claim" in express terms based on when a complaint is served on the Insured.

30.     The amended Feld complaint was served upon HSUS, Lovvorn, and Ockene during the Policy Period (in February 2010), thus triggering coverage during the Policy Period.

31.     Timely and appropriate notice of these claims was provided.

32.  National Union's refusal to provide insurance coverage constitutes a breach of contract.

33.  HSUS, Lovvorn, and Ockene are currently deprived of insurance coverage for which HSUS paid and have brought this lawsuit to enforce their contractual rights to such insurance coverage.

### COUNT I
### (BREACH OF CONTRACT AS TO THE INSURANCE POLICY)

34.  Plaintiffs incorporate by reference the allegations in the foregoing paragraphs hereof as if fully set forth herein.

35.  Plaintiffs performed their obligations under the terms of the Policy in all material respects.

36.  National Union has breached the terms of the Policy by refusing to pay the losses that Plaintiffs may, are, or will be obligated to pay because of the Feld Litigation, including attorneys' fees, costs and expenses incurred in the investigation and defense of the Feld Litigation.

37.  As a proximate result, Plaintiffs have incurred and will continue to incur attorneys' fees and defense costs in excess of $75,000.00.

38.  WHEREFORE, in light of the foregoing, Plaintiffs pray that a judgment of compensatory damages be entered against National Union for an amount in excess of $75,000.00, including interest, attorneys' fees incurred in this litigation, and the expenses and costs of this suit.

## COUNT II
### (DECLARATORY JUDGMENT AS TO THE INSURANCE POLICY)

39.     Plaintiffs incorporate by reference the allegations in the foregoing paragraphs hereof as if fully set forth herein.

40.     An actual and justiciable controversy exists between the parties herein regarding coverage of the claims at issue under the terms of the Policy.

41.     The complaint filed by Feld Entertainment in 2010 alleges Claims for Loss as those terms are defined in the Policy.

42.     A Claim was made during the 2009-2010 Policy Period.

43.     Plaintiffs reported that Claim to National Union during the Policy Period.

44.     The complaint filed by Feld Entertainment in 2010 alleges violations of state and federal law and is covered under the terms of the Policy, as it alleges Wrongful Acts committed by Plaintiffs as that term is defined in the Policy.

45.     Under the terms of the Policy, National Union is obligated to pay all Losses Plaintiffs become legally obligated to pay, either as money damages or defense costs in connection with the 2010 Feld Lawsuit and the Feld Litigation.

46.     WHEREFORE, in light of the foregoing, Plaintiffs requests that this Court enter a judgment declaring as follows:

A. That National Union is obligated to pay all losses the Plaintiffs become legally obligated to pay in the Feld Litigation, including any judgment entered against them, as well as the attorneys' fees, costs, expenses, and interest incurred in the investigation and defense of the Feld Litigation;

B. That National Union is obligated to pay all costs incurred in bringing this action, including attorneys' fees, costs, expenses, and interest; and

10

D. That this Court grant such additional relief as may be necessary and appropriate.

## DEMAND FOR JURY TRIAL

47.     Plaintiffs hereby demand a trial by jury on all claims and issues triable as a matter

of right by a jury.

Respectfully submitted,

Respectfully submitted,

JENNER & BLOCK LLP.

FUREY, DOOLAN & ABELL, LLP

By _James A. Tucker / by RES / w/ authorization_

James A. Tucker
jtucker@jenner.com
1099 New York Avenue, N.W.
Suite 900
Washington, DC  20001-4412
Tel. 202.637.6335
Fax 202.639.6066

By: _____

Robert E. Grant, Bar No. 13262
rgrant@fdalaw.com
8401 Connecticut Avenue
Suite 1100
Chevy Chase, Maryland  20815-5803
Tel. 301.652.6880
Fax 301.652.8972

Attorneys for Plaintiffs Jonathan Lovvorn
and Kimberly Ockene

Attorneys for Plaintiff The Humane Society
of the United States

Of Counsel on behalf of Plaintiffs Jonathan
Lovvorn and Kimberly Ockene:

Lorelie  S. Masters
Jan Larson
Jenner & Block LLP
1099 New York Avenue, N.W.
Suite 900
Washington, DC 20001-4412
Tel (202) 639-6076
Fax (202) 661-4924
LMasters@jenner.com
jlarson@jenner.com
(Pro hac vice motion to be submitted)

Of Counsel on behalf of Plaintiff the
Humane Society of the United States:

Howard T. Weir, III
Weir & Schmutz PC
Franklin Square
1300 Eye Street N.W., Suite 300 West
Washington, D.C. 20005-3353
Tel 202.216.1010
(Pro hac vice motion to be submitted)

David T. Miller
Miller & Miller Law Firm LLC
950 Walnut Bottom Road
Suite 15-209
Carlisle, PA 17015
Tel 717.609.4930
(Pro hac vice motion to be submitted)

11