IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| | : |
| THE HUMANE SOCIETY OF THE | |
| UNITED STATES, et al. | : |
| | |
| v. | : Civil Action No. DKC 13-1822 |
| | |
| | : |
| | |
| NATIONAL UNION FIRE INSURANCE | |
| COMPANY OF PITTSBURGH, PA | : |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this insurance coverage case is the motion to strike the expert report and testimony of Dennis Connolly filed by Defendant National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union" or "Defendant"). (ECF No. 37). Also pending is the motion to strike Plaintiffs' surreply, filed by Defendant. (ECF No. 49). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Defendant's motion to strike Plaintiffs' expert report and testimony will be denied. Defendant's motion to strike Plaintiffs' surreply will be granted, but the footnote in Defendant's reply brief will not be considered.

## I. Background

This case involves a claim for insurance coverage by Plaintiffs Humane Society of the United States ("HSUS") and two

of its employees, Jonathan Lovvorn and Kimberly Ockene, in connection with a suit filed against them by Feld Entertainment, Inc.  HSUS is a national nonprofit organization dedicated to protecting animals.  (ECF No. 2 ¶ 1).  Plaintiffs Jonathan Lovvorn and Kimberly Ockene are employed as attorneys with HSUS.  (*Id.* ¶¶ 2-3).  HSUS purchased insurance from National Union through BB&T, an insurance broker.  (*Id.* ¶ 8).  National Union issued to HSUS a Management Liability, Professional Liability, Crime Coverage and Kidnap and Ransom/Extortion Coverage for Non Profit Organizations, Policy No. 01-932-56-98, for the policy period June 1, 2009 to June 1, 2010 ("the Policy").  (*Id.* ¶ 9).  The policy includes a Directors and Officers Liability ("D&O") Coverage section and provides for $20 million in insurance protection for the organization and individual insureds.  Plaintiffs' complaint alleges that:

> [t]he Policy was designed to protect HSUS and its directors, officers, and employees from certain risks of loss.  Those risks included risks arising out of their nonprofit work on behalf of animals, which included litigation, legislative and lobbying efforts, humane education and public awareness campaigns, and, in part through its affiliates, owning and operating animal sanctuaries and wildlife rehabilitation centers on a nationwide basis.

(*Id.* ¶ 12).

In 2000 and 2003, the Fund for Animals ("FFA") – a corporate entity that Plaintiffs allege was a separate organization from HSUS but later became affiliated with HSUS – brought lawsuits against Feld Entertainment, Inc., alleging violations of the Endangered Species Act based on its treatment of elephants ("the ESA litigation"). (*Id.* ¶ 18). In August 2007, Feld Entertainment, Inc. sued the FFA, claiming violations of RICO and state law in a conspiracy against Feld Entertainment ("the 2007 Feld Lawsuit"). Plaintiffs were not named as parties to this lawsuit. The Feld Lawsuit was stayed from November 2007 to December 2009, pending resolution of the ESA Litigation. In December 2009, after a non-jury trial, judgment was entered in favor of Feld Entertainment in the ESA litigation; at that time, the stay on the 2007 Feld Lawsuit was lifted. (*Id.* ¶ 21). In February 2010, Feld Entertainment, Inc. amended its 2007 complaint, naming HSUS, Jonathan Lovvorn, and Kimberly Ockene – Plaintiffs here – as additional defendants. (*Id.* ¶ 22); *see Feld Entertainment, Inc. v. Animal Welfare Institute, et al.*, United States District Court for the District of Columbia, Case No. 1:07-cv-01532-EGS, at ECF No. 25.[1]

---

[1] On May 15, 2014, Feld Entertainment filed a joint stipulation of dismissal with prejudice in the District of Columbia, which Judge Emmet G. Sullivan approved. *Feld Entertainment, Inc. v. Animal Welfare Institute, et al.*, U.S. District Court for the District of Columbia, Case No. 1:07-cv-01532-EGS, at ECF No. 234. The joint stipulation indicates that

Consequently, Plaintiffs sought coverage from National Union for the Feld Litigation.  On May 26, 2010, Chartis, the administrator handling claims on behalf of National Union, sent a coverage disclaimer letter to HSUS's General Counsel, denying coverage "based on the Insureds' failure to provide notice during the policy period." (*Id.* ¶ 24).  National Union contends that HSUS failed to disclose in the insurance policy application that FFA, a corporate affiliate, was already a defendant in the Feld Litigation.  National Union also asserts that it "disclaimed coverage because, pursuant to the terms of the National Union policy, the lawsuit brought against FFA in 2007 constituted a claim first made against HSUS in 2007 and thus was not first made against HSUS during the 2010 policy term." (ECF No. 37-1, at 2).

Plaintiffs initially filed suit against National Union in the Circuit Court for Montgomery County, Maryland.  On June 21,

---

Feld Entertainment entered into a Settlement Agreement and Release with, *inter alia*, HSUS, Jonathan Lovvorn, and Kimberly Ockene.  According to a press release issued by Feld Entertainment, the parties settled in the amount of $15.75 million.  Press Release, Feld Entertainment, Inc., Humane Society of the United States and Co-Defendants Pay $15.75 Million Settlement to Feld Entertainment Ending 14 Years of Litigation (May 15, 2014) (*available at* http://www.feldentertainment.com/PressRoom/DisplayPressRelease/7 1271/ (last visited July 3, 2014)).  The parties state in the joint stipulation that the Settlement Agreement and Release applies to all claims asserted in the action by Feld Entertainment against the defendants in the case, and by the defendants against Feld Entertainment.

2013, Defendant removed the action to this court, citing diversity jurisdiction, 28 U.S.C. § 1332. (ECF No. 1). In the complaint, Plaintiffs assert a breach of contract claim against National Insurance, arguing that it "has breached the terms of the Policy by refusing to pay the losses that Plaintiffs may, are, or will be obligated to pay because of the Feld Litigation." (ECF No. 2 ¶ 36). Plaintiffs also seek a declaratory judgment that National Union is obligated to pay all losses the Plaintiffs become legally obligated to pay in the Feld Litigation. (*Id.* ¶ 46).

Defendant answered the complaint on June 28, 2013. (ECF No. 10). The undersigned issued a scheduling order on July 1, 2013, setting August 30, 2013 as the deadline for Plaintiffs' Rule 26(a)(2) expert disclosures. (ECF No. 11, at 2). On August 30, 2013, Plaintiffs served an initial expert disclosure, identifying Dennis Connolly as an expert witness. (*See* ECF No. 37-6). This initial report stated:

> Mr. Connolly has been retained in this action to opine regarding insurance industry custom and practice as to the type of insurance at issue here, the drafting of insurance policy forms and provisions, background on directors and officers ("D&O") insurance, and the structure and purpose of D&O insurance programs.

(*Id.* at 3). The Rule 26(a)(2) disclosure included Mr. Connolly's curriculum vitae, his hourly rate, and a list of

cases in which he served as an expert.   The expert disclosure
did not include Mr. Connolly's opinion regarding any issues in
this dispute.   The disclosure stated that "[b]ecause discovery
in this case has not closed, Mr. Connolly has neither finalized
the list of materials upon which he will rely for his opinions
nor has he finalized his opinions.   Plaintiffs will timely
supplement this disclosure after discovery proceeds, and Mr.
Connolly completes his review of materials and finalizes his
expert report."   (*Id.* at 3-4).   Defense counsel subsequently
sent a letter to Plaintiffs, dated September 13, 2013,
challenging the sufficiency of the August 30, 2013 expert
disclosure and requesting that Plaintiffs supplement the
disclosure.   (*See* ECF No. 37-7).   The parties then submitted a
consent motion to extend the deadlines for the parties' Rule
26(a)(2) expert disclosures, setting October 11, 2013 as the new
deadline for Plaintiffs to submit their Rule 26(a)(2)
disclosures, November 8, 2013 as the deadline for Defendant's
Rule 26(a)(2) disclosures, and November 25, 2013 as the deadline
for Plaintiffs' rebuttal Rule 26(a)(2) disclosures.   (ECF No.
34, at 2).   The undersigned granted the consent motion.   (ECF
No. 35).   Plaintiffs served on Defendant the supplemental expert
report of Dennis Connolly on October 11, 2013 (ECF No. 37-8).

On November 8, 2013, Defendant moved to strike the expert
report of Dennis R. Connolly and to preclude him from offering

testimony in this matter.  (*See* ECF No. 37).  Plaintiffs opposed
the motion on November 25, 2013 (ECF No. 38), and Defendant
replied on December 30, 2013 (ECF No. 47).  Plaintiffs then
submitted a surreply, and Defendant moved to strike the surreply
on January 22, 2014.  (ECF No. 49).[2]  On February 14, 2014, the
parties submitted a joint motion stating that they have agreed
to pursue a formal private mediation process before completing
discovery and requested that all proceedings be stayed during
the pendency of the mediation.  (ECF No. 50).  The undersigned
granted the joint motion to stay.  (ECF No. 51).  On April 25,
2014, the parties filed a joint status report indicating that
they did not settle the case and wished to proceed with
discovery.  (ECF No. 55).[3]

## II.  Analysis

The admissibility of expert testimony is governed by
Fed.R.Evid. 702 and 703, which vest discretion in the trial
judge to admit evidence if the specialized knowledge will assist

---

[2] Plaintiffs filed a surreply to respond to a footnote in
Defendant's reply brief.  Local Rule 105.2(a) states that
"[u]nless otherwise ordered by the court, surreply memoranda are
not permitted to be filed."  Moreover, the footnote in
Defendant's reply brief is wholly irrelevant to the motion to
strike Plaintiffs' initial expert report.  Thus, the motion to
strike the surreply will be granted, but the footnote will not
be considered.

[3] The parties proposed new discovery deadlines in the joint
status report.  The undersigned approved the parties' proposed
schedule.  (ECF No. 56).

the trier of fact to understand the evidence or determine a fact in issue.  The testimony must be based on sufficient facts or data; it must be the product of reliable principles and methods; and the expert must reliably apply the principles and methods to the facts of the case.  *See In re Rood*, 482 B.R. 132, 152 (D.Md. 2012).  Moreover, Fed.R.Civ.P. 26(a)(2) imposes disclosure requirements for expert witnesses "retained or specially employed to provide expert testimony in the case."  Fed.R.Civ.P. 26(a)(2)(B).  Specifically, for such witnesses, the expert disclosure must "be accompanied by a written report prepared and signed by the witness," which includes:

> a complete statement of all opinions to be expressed and the basis and reasons therefore; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

Fed.R.Civ.P. 26(a)(2)(B).

The curriculum vitae of Dennis Connolly reflects that he is a former Managing Director of Marsh USA Inc., the largest international insurance brokerage, human resource, and employee benefits consulting firm.  (*See* ECF No. 37-8).  Mr. Connolly has

spent over forty years in the field of insurance and liability law. According to the expert report, Plaintiffs have retained Mr. Connolly to "present expert testimony regarding the development and use of claims-made directors and officers liability ('D&O') insurance policies." (*Id.* at 2). The expert report consists of: Mr. Connolly's qualifications; a primer on insurance; an explanation of the different types of insurance; description of the insurance-purchase process; an explanation of how insurance companies make money; explanation of D&O insurance, insurance regulation, and casualty underwriting best practices; Mr. Connolly's opinions regarding the questions in National Union's 2009 Not-for-Profit Risk Protector Mainform Application; Mr. Connolly's opinion regarding Endorsement No. 6 to the National Union Policy; and Mr. Connolly's opinion regarding whether the claims against Plaintiffs for which Plaintiffs seek coverage were first reported to National Union during the policy period.

National Union argues that Plaintiffs' expert report should be stricken in its entirety, but offers specific objections to three opinions in the report: (1) that the questions in Defendant's application for insurance were ambiguous as to the information being requested; (2) that Endorsement No. 6 to the National Union Policy is not intended to apply to any facts, statements, warranties, or representations in the insurance

application that are not material to the insurer as part of the underwriting process; and (3) that Plaintiffs' claim was first made and reported during the policy period of the National Union Policy.  National Union complains that the content of the expert report contains legal conclusions, would not aid the jury, and does not comply with Fed.R.Civ.P. 26(a)(2)(B).[4]

**A. Questions in the Application**

Mr. Connolly opines:

> Based on my experience in the insurance industry and knowledge of insurance industry custom and practice and based on the materials I have reviewed to date, it is my opinion that certain questions in that application, including but not limited Questions 3, 5, and 6 under Section B. CLAIMS HISTORY INFORMATION, *are ambiguous as to the information being requested.*

(*Id.* ¶ 54) (emphasis added).  National Union argues that ambiguity in any writing is a question of law, thus Mr. Connolly

---

[4] Plaintiffs' argument that Defendant's motion should be denied for failure to comply with Local Rule 104.7 will be rejected.  Local Rule 104.7 requires counsel to confer with one another concerning a discovery dispute and attempt to resolve their differences before coming to court.  Defendant informed Plaintiffs that it found the August 30, 2013 expert disclosure wholly inadequate, but it is unclear whether Plaintiffs were aware – prior to the instant motion - that Defendant also found inadequate their October 2013 supplemental expert disclosure.  The email correspondence between counsel reveals only that Defendant requested to depose Mr. Connolly after Plaintiffs submitted a supplemental expert report, but Plaintiffs refused to do so before Defendant identified its own expert.  Although the parties likely would have benefited from conferring before Defendant filed the motion to strike, the motion will not be denied on this basis.

cannot opine on the ambiguity of the questions in the application. National Union cites *Mona v. Mona Elec. Group, Inc.*, 176 Md.App. 672, 719 (2007), for this proposition. In *Mona*, 176 Md.App. at 719, the court found unambiguous specific language in a tax basis letter, which memorialized an agreement between the parties. Although the court broadly stated that "[t]he ambiguity *vel non* of a writing is a question of law," this statement was made in the context of determining whether an agreement between the parties was ambiguous. *See also Calomiris v. Woods*, 353 Md. 425, 435 (1999) (interpreting whether provisions of a mortgage were ambiguous and stating that "[i]n determining whether a writing is ambiguous, Maryland has long adhered to the law of the objective interpretation of contracts."). In the insurance context, the proper inquiry is whether the terms of the policy are ambiguous. *See Nautilus Ins. Co. v. BSA Ltd. P'ship*, 602 F.Supp.2d 641, 648 (D.Md. 2009) ("[i]f the terms used are unambiguous, the meaning of the terms are determined by the court as a matter of law."); *Glaser v. Hartford Cas. Ins. Co.*, 364 F.Supp.2d 529, 534 (D.Md. 2005) ("[p]ursuant to Maryland law, an insurance agreement is to viewed as a whole to determine the intention of the parties and the purpose which they sought to accomplish."). National Union reads *Mona* too broadly, but, here, the insurance application is part of the policy issued to Plaintiffs:

> Signing of this application does not bind the applicant or the insurer to complete the insurance, but it is agreed that this application shall be the basis of the contract should a policy be issued, and *it will be attached to and become part of the policy.*

(ECF No. 37-3, at 13) (emphasis added).  Thus, Mr. Connolly's opinion regarding the ambiguity of the questions in the application applies to a document which became part of the insurance policy.

Although Mr. Connolly uses the word "ambiguous" to describe the information requested in certain questions in the application, his opinion critiques National Union's underwriting practice vis-a-vis best practices in the insurance industry and does not truly construe a term in the policy.  Mr. Connolly qualifies his opinion with the following statement:

> As stated above, and consistent with insurance industry custom and practice, and underwriting best practices, *National Union should have and had an obligation to ask additional questions or for clarification if it had questions or concerns about information provided in response to its questions in the insurance application.*

(ECF No. 37-8 ¶ 54) (emphasis added).  Thus, Mr. Connolly's opinion with respect to questions in the application is that the questions alone were insufficient for National Union to gather all the pertinent information to assess the risk presented in the application.

Defendant also argues that "Mr. Connolly's opinion that National Union had an obligation to ask additional questions or for clarification is an improper legal conclusion. . . . [H]e may not testify about National Union's contractual requirements under the Policy." (ECF No. 37-1, at 10). Defendant misconstrues this portion of Mr. Connolly's testimony. First, he mentions nothing about National Union's contractual requirements under the *policy*; he states that in light of best practices in the insurance industry, National Union should have probed deeper than the questions asked in the application. Second, the ultimate dispute in this case concerns insurance coverage. In the context of this case, a legal conclusion would address the question of whether Plaintiffs are or are not entitled to coverage under the terms of their insurance policy with National Union. Mr. Connolly's opinion regarding National Union's obligation to ask prospective insureds additional questions does not reach this ultimate question.

Defendant's additional argument that in discussing the purported deficiencies in the application questions, Mr. Connolly fails to explain the industry custom and practice is belied by the record. Mr. Connolly opines that best practices in the insurance industry require insurers to supplement the application with additional information gathered from the applicant. He explains:

> An important part of the underwriting
> process is the insurer's ability to ask
> pertinent questions when concerns arise
> regarding the risk presented in the
> application. Thus, before offering a
> quotation for the coverage, the underwriter
> must take full advantage of all
> opportunities presented in the course of the
> application process to probe as deeply as
> possible into the exposures proposed to be
> covered. To reiterate, underwriting best
> practices call for any such inquiries – and
> the answers received from the applicant – to
> be documented and maintained in the
> insurer's files.

(ECF No. 37-8 ¶ 52). Whether Mr. Connolly's opinion regarding National Union's purported failure to "probe deeper" will be helpful to resolving the ultimate issue remains to be seen, but at this point, his opinion regarding the clarity of the application appears proper and will not be stricken.

**B. Endorsement No. 6**

Next, Defendant argues that "Mr. Connolly's opinion that Endorsement No. 6 is 'not intended to apply to' any facts or representation in the Policy that are not material to National Union is not true expert opinion, but another example of his interpretation [of] the Policy." (ECF No. 37-1, at 10). Endorsement No. 6 appears to be part of the Policy issued to Plaintiffs. It states that "[t]his endorsement, effective [] June 1, 2009 forms a part of policy number 01-932-56-98 issued to the Humane Society of the United States Inc. by National Union Fire Insurance Company of Pittsburgh, Pa." (ECF No. 37-4,

at 2).  Endorsement No. 6 states that "[s]olely with respect to

the D&O Coverage Section and the EPL Coverage Section, the

following shall apply:

> In granting coverage under this policy, it
> is agreed that Insurer has relied upon the
> statements and representations contained in
> the application for this policy (including
> materials submitted thereto and, if this is
> a renewal application, all such previous
> policy applications for which this policy is
> a renewal) as being accurate and complete.
> All such statements and representations are
> the basis of this policy and are to be
> considered as incorporated into this policy.

(*Id.*).  Endorsement No. 6 further states that:

> in the event that any of the statements,
> warranties or representations is not
> accurately and completely disclosed in the
> application, no coverage shall be afforded
> to any Claim alleging, arising out of, based
> upon, attributable to or in consequence of
> the subject matter of any incomplete or
> inaccurate statements, warranties or
> representations.

(*Id.*).  With respect to Endorsement No. 6, Mr. Connolly states

in the expert report:

> It is also my opinion based on my experience
> in the insurance industry and knowledge of
> insurance industry custom and practice that
> Endorsement No. 6 of the National Union
> Policy entitled "Severability of the
> Application Endorsement," *is not intended to
> apply to any facts, statements, warranties,
> or representations in the insurance
> application that are not material to the
> insurer as part of the underwriting process.*

(ECF No. 37-8 ¶ 55) (emphasis added).

National Union argues that "[o]nly the language of the Policy may be used to determine the intent of the parties. Moreover, rather than give an opinion based on some factual analysis, Mr. Connolly's legal conclusion concerning the intent of Endorsement No. 6 is improper and must be stricken." (ECF No. 37-1, at 10-11). Under Maryland law, courts determine the meaning of contract language by adhering "to the principle of the objective interpretation of contracts." *ABC Imaging of Washington, Inc. v. The Travelers Indem. Co. of Am.*, 150 Md.App. 390, 397 (2003). If a contract, such as an insurance policy, is unambiguous, "the court must give effect to its plain meaning and not contemplate what the parties may have subjectively intended." *Nova Research, Inc. v. Penske Truck Leasing Co.*, 405 Md. 435, 448 (2008); *see also Forest Creek Assoc. v. McLean Savs. And Loan Ass'n*, 831 F.2d 1238, 1242 (4th Cir. 1987) ("Here again the commitment agreement speaks for itself, and its proper interpretation is a question of law. Thus, we find that the district court was correct in excluding expert testimony proffered by the plaintiffs for the purpose of interpreting the [contract]."); *Piankatank River Golf Club, Inc. v. Selective Way Insurance Company*, Civil Action No. 3:08cv606, 2009 WL 1321512, at *4 (E.D.Va. May 11, 2009) ("it is settled that it is typically improper for a court to rely on expert testimony for the purposes of interpreting certain terms and/or clauses of a

contract."). A contract term is ambiguous if, "when read by a reasonably prudent person, it is susceptible of more than one meaning." *Id.* If a term is ambiguous, its interpretation is a question for the fact finder. *Prison Health Servs., Inc. v. Balt. Cnty.*, 172 Md.App. 1, 8 (2006).

Plaintiffs assert that "Mr. Connolly provides guidance to the trier of fact as to how the members of the industry weigh certain aspects of the information provided to them during the insurance purchasing process." (ECF No. 38, at 12). National Union counters that "Mr. Connolly cannot opine about the actual intent of unambiguous language in Endorsement 6 based only on his general experience and knowledge and unspecified custom and practice in the insurance industry." (ECF No. 47, at 3). National Union argues that Mr. Connolly's vague references, "without any explanation of his relevant experience or a discussion of the custom, adds nothing and certainly does not permit National Union to determine the basis for his opinion." (ECF No. 37-1, at 14). Fed.R.Civ.P. 26(a)(2)(B) requires expert disclosures to be accompanied by a written report which includes "a complete statement of all opinions to be expressed and *the basis and reasons therefore*." (emphasis added). Although Mr. Connolly's report explains basic insurance principles and the underwriting process, the basis for his opinion regarding Endorsement No. 6 is unclear. Accordingly, Plaintiff will have

17

fourteen (14) days to serve on defense counsel a supplemental expert report that identifies explicitly the basis and reasons for Mr. Connolly's opinion that Endorsement No. 6 is not intended to apply to any facts, statements, warranties, or representations in the insurance application that are not material to the insurer as part of the underwriting process.

### C. Claim First Made During the Policy Period

Defendant also argues that "Mr. Connolly may not testify that the First Amended Complaint in the Feld Litigation is a claim that was reported in a timely manner and consistent with the Policy's reporting provisions." (ECF No. 37-1, at 11). Mr. Connolly states:

> I have reviewed the Amended Complaint in *Feld Entertainment, Inc. v. ASPCA, et al.*, Civil Action No. 1:07-01532-EGS, which was filed on February 16, 2010, in the U.S. District Court for the District of Columbia (the "2010 Action"). I have also reviewed the notice from HSUS to National Union of the 2010 Action, dated March 1, 2010. Based on my experience in the insurance industry and knowledge of insurance industry custom and practice, and the materials I have reviewed to date, *it is my opinion that the 2010 Action constitutes a claim made and reported during the policy period of the National Union Policy and consistent with the sections of the National Union Policy* entitled "General Terms and Conditions, Section 7: Notice/Claim Reporting Provisions."

(ECF No. 37-8 ¶ 57) (emphasis added). Defendant argues that by offering this testimony, Mr. Connolly "is opining that

Plaintiffs are entitled to coverage under the Policy – a clear example of an improper legal conclusion. Plaintiffs have the burden of proof to show their entitlement to coverage, and Mr. Connolly may not testify that Plaintiffs have met their burden." (ECF No. 37-1, at 11). Plaintiffs argue in the opposition that "Mr. Connolly provides an opinion, not as to the conclusion but as to the process – that HSUS performed each of the steps necessary to satisfy the obligations of the policy as those obligations are understood in the industry." (ECF No. 38, at 13). The actual content of the expert report contradicts Plaintiffs' interpretation of Mr. Connolly's opinion. As Defendant points out, "[n]owhere in his statement . . . does Mr. Connolly identify the steps in the so-called process or discuss how Plaintiffs complied with them." (ECF No. 47, at 10). Although Mr. Connolly generally asserts that he draws on his knowledge and experience in the insurance industry in concluding that Plaintiffs' claim falls within the policy period, he does not explain how he formulated this opinion. *See, e.g., Sullivan v. Glock, Inc.*, 175 F.R.D. 497, 503 n.11 (D.Md. 1997) ("[t]he purpose of [Rule 26(a)(2)(B)] disclosures is to provide information regarding expert testimony sufficiently in advance of trial that opposing parties have a reasonable opportunity to prepare for effective *cross examination* and perhaps arrange for expert testimony from other witnesses." (emphasis in original)

(internal citations omitted)).  For instance, Mr. Connolly does not identify what custom and practice enables him to conclude that HSUS timely reported the claim to National Union and it is unclear how this opinion would assist the trier of fact. Plaintiffs will have fourteen (14) days to serve on defense counsel a supplemental expert report which clarifies and explains the bases for Mr. Connolly's opinion that the claim was timely made.

### D. Rule 37

Defendant argues that pursuant to Fed.R.Civ.P. 37(c), Plaintiffs should be precluded from presenting expert testimony at trial because "Plaintiffs have now had two chances to properly disclose their expert and both times their expert disclosures have been defective." (ECF No. 37-1, at 15-16). Defendant also maintains that the inadequacies of Plaintiffs' report impeded its ability to prepare its own expert reports. (ECF No. 37-1, at 14).  Thus, Defendant asserts that if Plaintiffs are allowed another chance to serve an adequate expert disclosure, National Union should be allowed thirty (30) days to serve its own expert disclosure.  (ECF No. 47, at 12).

Defendant's request to preclude all of Plaintiffs' expert testimony will not be granted at this time.  Fed.R.Civ.P. 37(c)(1) states that:

> [i]f a party fails to provide information or
> identify a witness as required by Rule 26(a)
> or (e), the party is not allowed to use that
> information or witness to supply evidence on
> a motion, at a hearing, or at a trial,
> unless the failure was substantially
> justified or is harmless.

Excluding expert testimony "is an extreme sanction" and, if the evidence is critical, one "not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of the court order by the proponent." *Soufflas v. Zimmer, Inc.*, 474 F.Supp.2d 737, 745 n.4 (E.D.Pa. 2007); *Metts v. Airtrain Airways, Inc.*, Civil Action No. DKC 10-0466, 2010 WL 4183020, at *2-3 (D.Md. Oct. 22, 2010). Although Mr. Connolly does not explain the bases for two of his opinions in the expert report – regarding Endorsement No. 6 and HSUS's notice of the claim to National Union – striking expert testimony is a particularly harsh sanction and in this case, the shortcomings of the expert report do not warrant precluding Mr. Connolly from testifying altogether. *See Metts*, 2010 WL 4183020, at *3 (denying defendant's motion to preclude all of plaintiff's expert testimony where defendant argued that the disclosures were untimely and grossly inadequate). Plaintiffs will have fourteen (14) days to cure the deficiencies discussed *supra*. Defendant will have thirty (30) days after Plaintiffs serve a supplemental expert report to serve its own expert disclosure. Plaintiffs

will then have fourteen (14) days to submit rebuttal Rule 26(a)(2) disclosures.

## III. Conclusion

For the foregoing reasons, Defendant's motion to strike Plaintiffs' initial expert report of Dennis Connolly will be denied.  Defendant's motion to strike Plaintiffs' surreply will be granted, but the footnote in Defendant's reply brief will not be considered.  A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
