IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|   |   |   |
|---|---|---|
| THE HUMANE SOCIETY OF THE UNITED STATES, et al. | : | |
| v. | : | Civil Action No. DKC 13-1822 |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA | : | |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this insurance coverage dispute are: (1) a motion to exclude the testimony and written opinions of Dennis Connolly filed by Defendant National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union" or "Defendant") (ECF No. 74); and (2) a motion for summary judgment also filed by Defendant. The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Defendant's motion for summary judgment will be granted in part and denied in part. Defendant's motion to exclude will be denied without prejudice to renewal later in this litigation if necessary.

I.  **Background**

A.  **Factual Background**

Unless otherwise noted, the following facts are undisputed. Plaintiffs, Humane Society of the United States ("HSUS") and two of its employees, Jonathan Lovvorn and Kimberly Ockene, assert a

claim for insurance coverage against Defendant in connection with a suit filed against them by Feld Entertainment, Inc. HSUS is a national nonprofit organization dedicated to protecting animals. Plaintiffs Jonathan Lovvorn and Kimberly Ockene are employed as attorneys with HSUS.

In July 2000, the Fund for Animals ("FFA") joined other nonprofit organizations and a former circus employee in bringing a lawsuit against Feld Entertainment, Inc., Ringling Brothers, and Barnum & Bailey based on allegations that they mistreated Asian elephants used in the circus in violation of the Endangered Species Act ("the ESA Litigation").

On or about November 22, 2004, HSUS entered into an asset acquisition agreement with FFA. (ECF No. 75-3). On August 28, 2007, Feld filed a separate lawsuit in the United States District Court for the District of Columbia against, *inter alia*, FFA (but *not* HSUS or the individual attorneys). The complaint alleged violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") and the Virginia Conspiracy Act for conspiracy to harm a business. The RICO counts alleged violations of federal and state criminal statutes, including bribery, obstruction of justice, and mail and wire fraud. (ECF No. 68-8). Feld Entertainment alleged that in bringing the ESA Litigation, FFA and the other nonprofit organizations had perpetrated a scheme to defraud them of money and property, with

the ultimate objective of banning Asian elephants in all forms of entertainment and captivity (hereinafter "the Feld Litigation").

On November 7, 2007, the court in the District of Columbia stayed the Feld Litigation pending the outcome of the ESA Litigation.  The ESA Litigation proceeded to a bench trial and on December 30, 2009, a judgment was entered in favor of Feld Entertainment.  *See American Soc. for Prevention of Cruelty to Animals v. Feld Entertainment, Inc.*, 677 F.Supp.2d 55 (D.D.C. 2009).  Subsequently, the court lifted the stay of the Feld Litigation.

On February 16, 2010, Feld filed an amended complaint in the Feld Litigation, naming as additional defendants (the current Plaintiffs) HSUS, Jonathan Lovvorn, and Kimberly D. Ockene. (*See* ECF No. 68-12, amended complaint).  National Union issued to HSUS a Management Liability, Professional Liability, Crime Coverage and Kidnap and Ransom/Extortion Coverage for Non Profit Organizations, Policy No. 01-932-56-98, for the policy period June 1, 2009 to June 1, 2010 ("the Policy"). (ECF No. 68-6).  The policy includes a Directors and Officers Liability ("D&O") Coverage section and provides for $20 million in insurance protection for the organization and individual insureds.  On March 1, 2010, HSUS sent a letter to BB&T Insurance Services, Inc. ("BB&T"), its broker, attaching the

amended complaint in the Feld Litigation and asking BB&T to provide notice on behalf of HSUS, Lovvorn, and Ockene, and FFA under two National Union policies - the 2009-2010 National Union policy and a Corporate Counsel Premier Policy – and a General Commercial Liability Policy issued by Travelers. (ECF No. 68-14, at 2). BB&T subsequently submitted an Accord General Liability Notice of Occurrence/Claim to National Union. (ECF No. 68-15).

On May 26, 2010, Michael T. Howard, an employee of Chartis, the administrator handling claims under the Not-For-Profit Risk Protector Policy on behalf of National Union, sent a letter to HSUS denying coverage. (*See* ECF No. 68-16). The letter stated, in relevant part:

> Effective January 1, 2005, FFA and the Humane Society of the United States ("HSUS") merged.
>
> . . .
>
> This policy, subject to its terms and conditions, provides coverage for Loss arising from only those claims that were first made against an Insured and reported to National Union during the Policy Period. The Insured had notice of this claim on or about September 6, 2007, but did not report it to National Union until on or about March 2, 2010. Consequently, the claim was not first made and reported within the Policy Period. Based on the foregoing, we deny coverage for this claim pursuant to the Insuring Agreements in Clause 1 of the "D&O Coverage Section" of the policy, the definition of Claim in Clause 2(a) of the

4

> "D&O Coverage Section" of the policy and
> Clause 7(a) in the General Terms and
> Conditions Section of the policy entitled
> "Notice/Claim Reporting Provisions" . . . .
> National Union expressly reserves all of its
> rights under the policy, including the right
> to assert additional defenses to any claims
> for coverage, if subsequent information
> indicates that such action is warranted.

(*Id.* at 3, 5).

On June 16, 2010, HSUS wrote an email to National Union requesting reconsideration of the coverage denial. (ECF No. 68-17). The email stated that the "corporate combination between HSUS and the Fund for Animals which took effect on January 1, 2005, was absolutely not a 'merger'." (*Id.* at 3). HSUS also took the position that the original complaint in the Feld Litigation did not name HSUS, Lovvorn, and Ockene, thus the claim was first made against them when the amended complaint was filed in 2010. (*Id.*). National Union responded on July 16, 2010, supplementing its position but maintaining the coverage denial. (ECF No. 68-18). National Union provided a defense to Defendants Lovvorn and Ockene,[1] subject to a reservation of

---

[1] In her responses to interrogatories, Kimberly Ockene explained that she was an attorney with the firm Meyer Glitzenstein and Crystal ("MGC") from October 2001 through October 2008. She stated that during her employment with MGC, she had minimal involvement with the Feld Lawsuit, and was "engaged in attorney-client communications with defendants in the Feld Lawsuit." (ECF No. 68-10, at 14). Jonathan Lovvorn had been employed by HSUS since approximately December 2004, maintained his appearance in the ESA Litigation and monitored the case, and in 2007, "oversaw the search for and compilation

rights, under the Corporate Counsel Premier Policy, a different policy from the 2009-2010 Policy at issue here. (*See* ECF No. 68-19, Mar. 18, 2010 letter from Chartis regarding defense of Lovvorn and Ockene; *see also* ECF No. 68-1, at 15 n.4)).   On September 13, 2010, Travelers agreed to *defend* HSUS in the Feld Litigation under the January 1, 2000 – December 31, 2000 Charter Oak Fire Insurance Company policy (the "2000 Travelers Policy"), but declined to defend the FFA, Mr. Lovvorn, or Ms. Ockene. (ECF No. 68-20).

In September 2012, FFA filed suit against National Union in the Circuit Court for Montgomery County (Case No. 376268V) demanding coverage under the 2007-2008 National Union Policy and the 2009-2010 National Union Policy.   The docket from that case reflects that on December 18, 2014, Judge Boynton entered an amended order granting in part National Union's motion for summary judgment as to Count II of FFA's amended complaint for breach of contract relative to the 2009-2010 policy and the part of Count III in which FFA sought a declaration that National Union was required to provide it with coverage under the 2009-

---

of documents in response to the court's August 23, 2007 discovery order as it pertained to FFA.   At the court's direction, he appeared before the court to answer questions concerning FFA's compliance with a court order." (ECF No. 68-11, at 22).

2010 policy.  On March 12, 2015, a final judgment was entered in favor of National Union on all claims.[2]

On or about May 13, 2014, HSUS, FFA, and the other defendants in the Feld Litigation agreed to pay $15.75 million to settle both Feld Entertainment's claim for attorney's fees in the ESA Litigation and its claims in the Feld Litigation.  (*See* ECF No. 68-13).  Additional facts will be presented in the analysis section.

### B.   Procedural Background

Plaintiffs initially filed suit against National Union in the Circuit Court for Montgomery County, Maryland.  On June 21, 2013, National Union removed the action to this court on diversity grounds.  (ECF No. 1).  In the complaint, Plaintiffs assert a breach of contract claim against National Union, arguing that it "has breached the terms of the Policy by refusing to pay the losses that Plaintiffs may, are, or will be obligated to pay because of the Feld Litigation."  (ECF No. 2 ¶ 36).  Plaintiffs also seek a declaratory judgment that National Union is obligated to pay all losses that Plaintiffs may become legally obligated to pay in the Feld Litigation.  (*Id.* ¶ 46).

In a memorandum opinion and order issued on July 3, 2014, the court denied Defendant's motion to strike the report and

---

[2] The docket from Case No. 376268V indicates that The Fund for Animals filed an appeal to the Court of Special Appeals of Maryland on April 30, 2015.

testimony of Plaintiffs' proposed expert, Dennis Connolly, but required Plaintiffs to cure certain deficiencies and serve a supplemental expert report. (*See* ECF No. 59). After discovery concluded, Defendant moved for summary judgment. (ECF No. 68). Plaintiffs opposed the motion (ECF No. 73), and Defendant replied (ECF No. 75). Defendant also again moved to exclude the testimony and written opinions of Plaintiffs' proposed expert, Dennis Connolly. (ECF No. 74). Plaintiffs opposed the motion (ECF No. 81), and Defendant replied (ECF No. 82).

## II.  Standard of Review

A motion for summary judgment will be granted only if there exists no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). Once a properly supported motion for summary judgment is filed, the nonmoving party is required to make a sufficient showing on an essential element of that party's claim as to which that party would have the burden of proof to avoid summary judgment. *Celotex,* 477 U.S. at 322-23.

Summary judgment is appropriate under Federal Rule of Civil Procedure Rule 56(a) when there is no genuine dispute as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. In *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. at 249 (1986), the Supreme Court explained that, in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (*quoting United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005). The mere existence of a "scintilla" of evidence in support of the non-moving party's case is not sufficient to preclude an order granting summary judgment. *See Anderson,* 477 U.S. at 252.

A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F.Supp.2d 373, 375 (D.Md. 2001) (citation omitted).

Indeed, this court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt,* 999 F.2d 774, 778-79 (4th Cir. 1993) (*quoting Felty v. Graves-Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir. 1987)).

## III. Analysis

### A.  Defendant's Motion for Summary Judgment

### 1.  Standard for Interpreting an Insurance Policy

The Fourth Circuit recently explained:

> Insurance policies, like other contracts, must be construed "as a whole to determine the parties' intention." *Beale v. Am. Nat'l Lawyers Ins. Reciprocal*, 379 Md. 643, 843 A.2d 78, 89 (2004) (internal quotation marks and citation omitted). A court will "examine the character of the contract, its purpose, and the facts and circumstances of the parties at the time of execution." *Pac. Indem. Co. v. Interstate Fire & Cas. Co.*, 302 Md. 383, 488 A.2d 486, 488 (1985). Policy terms are given "their ordinary and accepted meanings," and "[t]he test is what meaning a reasonably prudent layperson would attach to the term." *Id.* Policy language is ambiguous if it is "general" and "suggest[s] two meanings to a reasonably prudent layperson." *Id.* at 489 (internal quotation marks and citation omitted).

*Certain Underwriters at Lloyd's, London v. Cohen*, 785 F.3d 886, 890 (4th Cir. 2015); *Navigators Specialty Ins. Co. v. Medical Benefits Adm'rs of MD, Inc.*, Civ. Action No. ELH-12-2076, 2014 WL 768822, at *7 (D.Md. Feb. 21, 2014) ("In deciding the issue of coverage under an insurance policy, the primary principle of

construction is to apply the terms of the insurance contract itself." (internal quotation marks omitted)).  "[T]he same rules apply to ambiguities in a policy *application* . . . prepared by an insurer and made part of the insurance contract." *Cohen*, 785 F.3d at 890 n.2 (emphasis in original) (*citing Peoples Life Ins. Co. v. Jerrell*, 271 Md. 536 (1974)).  In Maryland, extrinsic evidence is not admissible to interpret an insurance policy that is unambiguous on its face. *See Cheney v. Bell Nat'l Life Ins. Co.*, 315 Md. 761, 766-67 (1989); *Nat'l Cas. Co. v. Lockheed Martin Corp.*, 415 F.Supp.2d 596, 601 (D.Md. 2006) (applying Maryland law and noting that "[w]hile the character of the [insurance] contract, its object and purposes, and the factual circumstances of the parties at the time of execution may assist in interpreting the meaning of a particular contractual provision, clear and unambiguous language must be enforced as written.").  "'Maryland does not follow the rule that insurance policies should, as a matter of course, be construed against the insurer.'" *Navigators*, 2014 WL 768822, at *8 (*quoting Megonnell v. United Services Auto. Ass'n*, 368 Md. 633 at 655 (2002)).  However, "if ambiguity is determined to remain after consideration of extrinsic evidence, 'it will ordinarily be resolved against the party who drafted the contract,' where no material evidentiary factual dispute exists." *Clendenin Bros., Inc. v. U.S. Fire Ins. Co.*, 390 Md. 449, 459-60 (2006).

### 2.   Analysis

The central issue is whether National Union is required to provide coverage to Plaintiffs with respect to the Feld Litigation under the terms of the 2009-2010 Policy.  National Union offers five separate reasons for why it properly denied coverage to Plaintiffs and why summary judgment should be entered in its favor.  National Union argues: (1) HSUS is not covered because it cannot meet its burden of proving that the Feld Litigation was a Claim first made against the "Organization," as defined in the Policy, during the 2009-2010 Policy Period; (2) coverage for the Feld Litigation is barred as to all Plaintiffs under the exclusion in the 2009 Application; (3) coverage for the Feld Litigation is excluded as to all Plaintiffs pursuant to Endorsement No. 6 to the National Union Policy; (4) coverage for the Feld Litigation is barred as to all Plaintiffs by Exclusion 4(b) of the Policy; and (5) the 2009-2010 National Union Policy is excess of the 2000 Travelers Policy. (*See* ECF No. 68-1).

As an initial matter, Plaintiffs argue that National Union waived all defenses aside from the "claims first made" argument by failing to raise them in the first coverage denial letter. Plaintiffs contend that "the May 26 letter did not alert HSUS that National Union was challenging the accuracy of the application that HSUS submitted for coverage. []  Nor did it

identify Endorsement No. 6, which National Union now contends is the lynchpin of its coverage position." (ECF No. 73, at 41-42). The Court of Appeals of Maryland explained waiver in insurance coverage disputes in *Creveling v. Government Employees Ins. Co.*, 376 Md. 72, 96-98 (2003):

> The doctrine of waiver may work to deprive an insurer of a right it would otherwise possess. *See GEICO v. Medical Services*, 322 Md. 645, 650 (1991). Waiver, in general, is "the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right, and may result from an express agreement or be inferred from circumstances." *Food Fair v. Blumberg*, 234 Md. 521, 531 (1964) (citations omitted). In insurance law, waiver requires "'an actual intention to relinquish an existing right, benefit, or advantage, with knowledge, either actual or constructive, of its existence, or such conduct as to warrant an inference of such intention to relinquish.'" *Medical Services*, 322 Md. at 650-51. . . .
>
> The doctrine of waiver cannot operate to expand or establish insurance coverage. *See Medical Services*, 322 Md. at 651; *Neuman v. Travelers Indemnity Co.*, 271 Md. 636, 654 (1974) . . . Judge Wilner, writing for the Court of Special Appeals in *Insurance Co. of North Am. v. Coffman*, described the doctrine of waiver and this exception as follows:
>
>> "The Court of Appeals sees a distinction between defenses founded upon lack of basic coverage and those arising from the failure of the claimant to satisfy some 'technical' condition subsequent. The former, it is apparent, may not be waived merely by the company's failure to specify

> them in its initial response to the
> claim, for the effect of that would be
> to expand the policy to create a risk
> not intended to be undertaken by the
> company."
>
> 52 Md.App. 732, 742-43 (1982). . . .
>
> To determine whether the doctrine of waiver
> may apply, the pivotal issue is whether a
> policy clause or condition proffered as a
> defense pertains to coverage or whether it
> arises from "the failure of the claimant to
> satisfy some 'technical' condition
> subsequent." *See Medical Services*, 332 Md.
> at 651. . . . "Conditions going to the
> coverage or scope of a policy as
> distinguished from those furnishing a ground
> for forfeiture may not be waived by
> implication from conduct or action.

Here, the defenses raised by National Union relate to coverage and National Union did not waive them by failing to raise all possible defenses in the initial coverage letter. *See, e.g., Emcor Group, Inc. v. Great Am. Ins. Co.*, Civ. No. ELH-12-0142, 2013 WL 1315029, at *29 (D.Md. Mar. 27, 2013) ("GAIC argues that the 2004 Policy did not provide coverage beyond the 2003 Policy, not that Emcor failed to abide by a technical prerequisite in filing its claim. . . . Accordingly, GAIC's purported failure to preview Condition 10 as a basis for its motion for partial summary judgment does not open the door to waiver here."). Moreover, National Union explicitly reserved its right to assert additional defenses in its May 26, 2010 coverage denial letter. The letter stated:

> This letter is not, and should not be construed as, a waiver of any terms, conditions, exclusions or other provisions of the policy, or any other policies of insurance issued by National Union or any of its affiliates. *National Union expressly reserves all of its rights under the policy, including the right to assert additional defenses to any claims for coverage, if subsequent information indicates that such action is warranted.*

(ECF No. 68-16, at 5) (emphasis added).

**a. "Claims First Made" Defense**

Defendant argues that "HSUS cannot meet its burden of proving that the Feld Litigation comes within the insuring agreement of the 2009-2010 National Union Policy because the Feld Litigation was filed in 2007. Thus, it is not a Claim first made against HSUS during the 2009-2010 Policy Period and HSUS is not covered." (ECF No. 68-1, at 24).

HSUS seeks coverage for any loss arising from the Feld Litigation under Insuring Agreement C (Organization Entity Coverage) of the D&O Coverage Section of the 2009-2010 Policy.[3] Insuring Agreement C provides:

> Coverage C: Organization Entity Coverage.

---

[3] Unlike HSUS, which seeks coverage pursuant to Insuring Agreement C of the D&O Coverage Section, the individual plaintiffs – Kimberly Ockene and Jonathan Lovvorn - appear to seek coverage pursuant to Insuring Agreement A concerning Individual Insured Insurance. (*See* ECF No. 68-6, at 35). Insuring Agreement A applicable to the individual plaintiffs will be discussed below.

> This policy shall pay *on behalf of the Organization Loss arising from a Claim first made against the Organization during the Policy Period or the Discovery Period (if applicable)* and reported to the Insurer pursuant to the terms of this policy for any actual *or alleged Wrongful Act of the Organization*. The Insurer shall, in accordance with and subject to Clause 5 of this Coverage Section, advance Defense Costs of such Claim prior to its final disposition.

(ECF No. 68-6, at 35) (emphases added).   The term "Claim" is defined as:

> (1) a written demand for monetary, non-monetary or injunctive relief (including any request to toll or waive any statute of limitations); or
>
> (2) *a civil, criminal, regulatory or administrative proceeding for monetary, non-monetary or injunctive relief which is commenced by:*
>
> *(i) service of a complaint or similar pleading;*
>
> (ii) return of an indictment, information or similar document (in the case of a criminal proceeding); or
>
> (iii) receipt or filing a notice of charges.

(*Id.* at 36) (emphasis added).[4]   Importantly, the term "Organization" is defined as: "(1) the Named Organization; (2)

---

[4] The General Terms and Conditions of the 2010 policy state that "Claim" means "a Claim, as that term is defined within each Coverage Section."   (ECF No. 68-6, at 8).   The D&O Coverage Section states: "Pursuant to Clause 1 of the General Terms and Conditions, the General Terms and Conditions are incorporated by reference into, made a part of, and are expressly applicable to

16

any Subsidiary thereof; *and (3) any Affiliate thereof listed by*
*endorsement to this policy, but solely with respect to the*
*Coverage Sections indicated on such endorsement*." (*Id.* at 9)
(emphasis added). Endorsement No. 11 to the 2009-2010 Policy
states, in relevant part:

> In consideration of the premium charged, it
> is hereby understood and agreed that solely
> with respect to the Coverage Section(s)
> listed below [including D&O Coverage],
> Clause 2. Definition [] "Organization" of
> the GENERAL TERMS AND CONDITIONS shall
> include the following entity(ies), which are
> "Affiliates" as defined in Clause 2,
> Definition(a). "Affiliate" of the GENERAL
> TERMS AND CONDITIONS, subject to each
> Affiliate(s)' respective Continuity Date.

(ECF No. 68-6, at 74). The Fund for Animals is identified as an
Affiliate in Endorsement No. 11, subject to the continuity dates
listed in Endorsements 8 and 9. (*Id.* at 75). National Union
argues that it is not obligated to provide coverage for HSUS for
the Feld Litigation because it is not a "Claim first made
*against the Organization* during the Policy Period." (emphasis
added). As set forth above, "Organization" under the Policy is
defined as the Named Organization *and* any Affiliate thereof
listed by endorsement to this policy, and Endorsement No. 11
specifically identifies The Fund for Animals as an Affiliate
within the meaning of the Policy. Consequently, National Union

---

this Coverage Section, unless otherwise explicitly stated to the
contrary in either the General Terms and Conditions or in this
Coverage Section." (ECF No. 68-6, at 35).

interprets the language in Insuring Agreement C stating that "[t]his policy shall pay on behalf of the Organization Loss arising from a Claim first made against the Organization during the Policy Period" as *excluding* the amended complaint filed against HSUS in 2009 because The Fund for Animals, which falls within the definition of "Organization," was sued by Feld Entertainment in 2007.

HSUS advances several arguments to avoid summary judgment, none of which are persuasive. First, HSUS misconstrues Defendant's denial of coverage to be based on HSUS's failure to provide timely notice of the Claim. (ECF No. 73 ("National Union's contention that HSUS is not entitled to coverage because it did not provide National Union with timely notice of the Feld Litigation is without merit.")). National Union is not seeking summary judgment based upon HSUS's failure to give timely notice, however. It is undisputed that HSUS provided notice of the Feld Litigation to National Union once it was named as a defendant in the amended complaint. The crux of National Union's argument, however, is that the amended complaint is *not* a "Claim" first made against "the Organization," as defined in the Policy, during the Policy Period for the reasons explained above. Second, HSUS argues that the term "Claim first made" is ambiguous. (ECF No. 73, at 43). HSUS avers that the term "Claim first made" is nowhere defined in the Policy and may mean

18

different things based on the "Notice/Claim Reporting Provisions" contained in the General Terms and Conditions section of the Policy. (*Id.*).   The Notice/Claim Reporting Provisions provide:

> Notice hereunder shall be given in writing[.] . . . Notice shall include and reference this policy number as indicated in the Declarations, as well as the Coverage Section(s) *under which the Claim is being noticed*.   If mailed, the date of mailing shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice.
>
> 1. With respect to all Coverage Sections, other than the Crime Coverage Section, the following shall apply:
>
> (a) The Insureds[5] shall, as a condition precedent to the obligations of the Insurer under this policy, give written notice to the Insurer of any claim made against an Insured or any Crisis Management Event (as defined in the D&O Coverage Section) as soon as practicable and either:
>
> (1) anytime during the Policy Period or during the Discovery Period (if applicable); or
>
> (2) within 30 days after the end of the Policy Period or the Discovery Period (if applicable) as long as such Claim is reported no later than 30 days after the date such Claim was first made against an Insured.
>
> (b) if written notice of a Claim has been given to the Insurer pursuant to Clause 7(a)

---

5 The "Insured(s)" is defined in the D&O Coverage Section as "the Organization and all Individual Insureds." (ECF No. 68-6, at 36).

above, then any Claim which is subsequently
made against the Insureds and reported to
the Insurer alleging, arising out of, based
upon or attributable to the facts alleged in
the Claim for which such notice has been
given, or alleging any Wrongful Act which is
the same as or is a Related Wrongful Act to
that alleged in the Claim of which such
notice has been given, shall be considered
made at the time such notice was given.

(c) If during the Policy Period or during
the Discovery Period (if applicable) the
Insureds shall become aware of any
circumstances which may reasonably be
expected to give rise to a Claim being made
against the Insureds and shall give written
notice to the Insurer of the circumstances
and the reasons for anticipating such a
Claim, with full particulars as to date,
persons and entities involved, then any
Claim which is subsequently made against the
Insureds and reported to the Insurer
alleging, arising out of, based upon or
attributable to such circumstances or
alleging any Wrongful Act which is the same
as or is a Related Wrongful Act to that
alleged or contained in such circumstances,
shall be considered made at the time such
notice of such circumstances was given.

(ECF No. 68-6, at 13-14).   Based on these provisions, HSUS

argues:

As demonstrated by the "Notice/Claim
Reporting Provisions" of the General
Conditions of the Policy, in some instances
National Union contemplates that a claim is
"made" at the time that the insured notifies
National Union of the claim, whereas in
other instances, a claim seems to have been
"made" when initiated by a third party. . .
.   Given these provisions of National
Union's own Policy, a reasonable layperson
may believe that a claim is "first made"

> upon written notice from the insured to
> National Union.

(ECF No. 73, at 43-44).

HSUS takes a piecemeal approach to interpreting the applicable language of Insuring Agreement C and its arguments are misguided. Insuring Agreement C (pertaining to Organization Entity Coverage) states that the policy "shall pay on behalf of the Organization Loss arising from a Claim first made against the Organization during the Policy Period . . . *and reported to the Insurer pursuant to the terms of this policy* for any actual or alleged Wrongful Act of the Organization." (ECF No. 68-6, at 35). A "Wrongful Act" is defined as: "(2) *with respect to the Organization* under Coverage C, any breach of duty, neglect, error, misstatement, misleading statement, omission or act by or on behalf of the Organization." (ECF No. 68-6, at 37) (emphasis added). The Notice/Claim Reporting Provisions set forth above pertain to the *reporting* to National Union of a Claim first made against the "Organization" during the Policy Period, but as National Union argues, the Claim first was made against The Fund for Animals (which is included in the definition of "Organization") in 2007. The Claim could not have been first made against the *Organization* during the Policy Period (2009-2010) because an "Affiliate" is included within the definition of "Organization," Endorsement No. 11 explicitly identifies The

21

Fund for Animals as an Affiliate, and it is undisputed that Feld

Entertainment filed a complaint against The Fund for Animals in

2007.

HSUS argues:

> Despite National Union's suggestion
> that it is "of no import" that HSUS was not
> named in the Feld Litigation until 2010, []
> that distinction is of significant import
> because until the Amended Complaint was
> filed, no Claim had ever been "made" that
> HSUS, Mr. Lovvorn, or Ms. Ockene engaged in
> any activity that could be construed as a
> "Wrongful Act." Until 2010, Feld had not
> filed suit against HSUS, Mr. Lovvorn, or Ms.
> Ockene. Similarly, Feld had not transmitted
> any letter, demand, or other notice to HSUS,
> Mr. Lovvorn, or M[s]. Ockene suggesting that
> it intended to join them as parties to the
> Feld Litigation or that it was considering
> seeking damages against them. Put another
> way, there was nothing for HSUS to "report"
> until Feld filed its Amended Complaint in
> 2010, two or so weeks after which HSUS
> provided timely notice to National Union of
> the filing.

(ECF No. 73, at 44). The notice requirements above are

triggered only when a Claim is first made *against the*

*Organization* during the Policy Period (or the Discovery Period,

if applicable). Here, the "Claim" was first made against The

Fund for Animals in 2007, outside the 2009-2010 coverage period.

Notably, if HSUS's reading of Insuring Agreement C is credited,

the court would have to read into the provision "a Claim first

made against the *Named* Organization during the Policy Period,"

instead of the "a Claim first made against the Organization."

"Named Organization" is defined in the Policy as "the Organization, designated in item 1 of the Declarations." (ECF No. 68-6, at 9). Item 1 in the Declarations identifies the Humane Society of the United States Inc. as the "Named Organization." (*Id.* at 2). Insuring Agreement C specifically uses the language of "a Claim first made against the Organization," which *includes* The Fund for Animals, an Affiliate named in Endorsement No. 11.[6]

Moreover, the Policy defines "Claim" as, *inter alia*, a civil proceeding for monetary, non-monetary, or injunctive relief *which is commenced by service of a complaint or similar pleading*. (ECF No. 68-6, at 36) (emphasis added). The analysis undertaken in *National Union Fire Ins. Co. of Pittsburgh, PA v. Willis*, 296 F.3d 336, 341-42 (5th Cir. 2002), applies here:

> All three policies define "Claim" as "a civil . . . proceeding . . . which is commenced by service of a complaint or similar pleading." Under this definition, the initial complaint brought by CyberServe "commenced" this civil proceeding as a whole. Under this plain reading of the contract's language, *amended complaints cannot commence a civil proceeding that has already been commenced by the filing and service of the initial complaint*. Any other

---

[6] National Union also moved for summary judgment in the insurance coverage dispute filed by The Fund for Animals in the Circuit Court for Montgomery County (Case No. 376268-V). Judge Boynton issued a memorandum opinion and order granting in part the motion. Notably, he held that the 2010 Amended Complaint is not a "Claim" first made against The Fund for Animals during the 2009-2010 policy period. (ECF No. 73-8, at 8).

> reading would result in one lawsuit
> qualifying as two different civil
> proceedings.

(emphasis added).

HSUS's argument that pursuant to Md. Code Ann., Ins. § 19-110, National Union failed to demonstrate any prejudice from the timing of HSUS's notice similarly misses the mark. (ECF No. 73, at 46). Section 19-110 provides:

> An insurer may disclaim coverage on a
> liability insurance policy on the ground
> that the insured . . . has breached the
> policy by failing to cooperate with the
> insurer or by not giving the insurer
> required notice only if the insurer
> establishes by a preponderance of the
> evidence *that the lack of cooperation or
> notice* has resulted in actual prejudice to
> the insurer.

(emphasis added). The issue here is whether the Claim first was made against the "Organization" within the Policy Period, *not* whether it was reported timely. As National Union argues, it "did not deny coverage, and is not seeking summary judgment, based upon HSUS's failure to give it *timely notice* of the Feld Litigation . . . Here, National Union need not prove prejudice because its disclaimer of coverage is based upon the Feld Litigation not being ***first made*** during the 2009-2010 Policy Period[.]" (ECF No. 75, at 28) (emphasis in original); *see Navigators Specialty, Ins Co.*, 2014 WL 768822, at *15 ("In my view, *Sherwood's* conclusion is crystal clear: Ins. § 19-110

applies to claims made-and-reported policies, like the one at issue here, when *the claim is made within the policy period* but is not reported until after the policy period.  In such a case, the insurer must show actual prejudice in order to avoid coverage.") (emphasis added); *see also McDowell Bldg., LLC v. Zurich American Ins. Co.*, Civ. Action No. RDB-12-2876, 2013 WL 5234250 (D.Md. Sept. 17, 2013) (explaining the scope of Section 19-110).

Based on the foregoing, no coverage is available for HSUS under the 2009-2010 Policy.

### b. Application Exclusion

National Union argues that HSUS failed to disclose that the Feld Litigation was pending against The Fund for Animals in its application for insurance coverage for 2009-2010, even though it was required to do so in response to Question 3 of Section B of the Application.  (ECF No. 68-1, at 19).  Consequently, National Union contends that, based on the exclusion contained in Part B of the Application, which became part of the 2009-2010 Policy, coverage is entirely excluded for HSUS *and* the individual plaintiffs, Mr. Lovvorn and Ms. Ockene.  Because no coverage is available to HSUS for the Feld Lawsuit under the 2009-2010 Policy, the arguments regarding the applicability of the application exclusion will be addressed only as to the individual plaintiffs – Kimberly Ockene and Jonathan Lovvorn.

The General Terms and Conditions of the Policy state: "In consideration of the payment of the premium, *and in reliance upon the statements made to the Insurer by application, including its attachments and the materials incorporated therein*, which form a part of this policy, the Insurer agrees as follows[.]" (ECF No. 68-6, at 8) (emphasis added). Question A.4 asked: "Please list all direct and indirect Subsidiaries. If included as an attachment herein, check here." (ECF No. 68-3, at 2). HSUS checked the box and included an attachment listing entity names, the nature of the organization's activities, the entity type, and status. (*Id.* at 16). The Fund for Animals is listed in the attachment and identified as an "Affiliate" in Entity Type.[7]  Question A.4 further asked: "Are you requesting for coverage to be extended to all Subsidiaries," to which HSUS responded "Yes." (*Id.* at 2). Question 3 of Section B of the Application asks:

> Has there been, or is there now pending any claim(s), suit(s), investigation(s) or action(s) against the Applicant, its Subsidiaries, or any individual *or other entity proposed for insurance arising out of:* (i) any director, officer, trustee, employee, employee benefit plan *or entity liability matter*, including securities matters and/or employment matters; or (ii) any matter claimed against any person proposed for insurance in his or her capacity under the proposed policy?

---

[7] In fact, all of the entities listed in the attachment are identified either as affiliates or a program of HSUS.

> Please answer with regard to:
>
> D&O and Private Company Liability  Yes  No X
>
> Employment Practices Liability  Yes  No X
>
> Fiduciary Liability   Yes  No X
>
> Employed Lawyers Professional Liability   Yes  No X

(*Id.* at 3) (emphases added).  The application does not define "entity liability matter."  The question states that "[i]f 'Yes' was checked with respect to any of the above, please attach complete details regarding those claims, suits, investigations or actions."  HSUS checked "no" for all of the boxes.  Section B of the Application contains the following exclusion:

> It is agreed that with respect to Questions 1 through 6(e) above, if such claim(s), suit(s), investigation(s), action(s), proceeding(s), inquiry, violation, knowledge, information or involvement *exists, then such claim(s), suit(s),* investigation(s), action(s), proceeding(s) or inquiry and any claim, action, suit, investigations, proceeding or inquiry arising therefrom or arising from such violation, knowledge, information or involvement *is excluded from the proposed coverage.*

(*Id.*) (emphases added).

Plaintiffs argue that "[i]n order to credit National Union's argument that coverage of HSUS [and the individual plaintiffs] should be excluded because HSUS did not disclose the Feld Litigation in response to the aforementioned Application

questions, it is essential that the factfinder in this case determine whether, had HSUS disclosed the Feld Litigation against FFA, National Union would not have issued the policy (or, perhaps, would have included a further endorsement excluding the Feld Litigation from coverage)." (ECF No. 73, at 17). National Union, on the other hand, believes that whether it would have issued the 2009-2010 Policy if the Feld Litigation had been disclosed in response to Question B.3 or whether the individual plaintiffs believed they would be sued is immaterial. (ECF No. 75, at 9).

Read together, Question B.3 and the exclusion – which National Union believes applies based on HSUS's response to that question – are ambiguous. Question B.3 is broadly written and appears to seek, *inter alia*, information about *any* claim or action currently pending or *ever* filed against an entity proposed for insurance arising out of an "entity liability matter." (ECF No. 68-3, at 3). As indicated above, the question concludes with: "If 'Yes' was checked with respect to any of the above, please attach complete details regarding those claims, suits, investigations or actions." Nothing on the record clarifies, however, what qualifies as an "entity liability matter," what the Applicant is required to disclose in response to Question B.3, and the consequences of answering "Yes" in response to this question. The broad exclusionary

language further amplifies the ambiguity as to what HSUS should have disclosed in response to Question B.3.  Specifically, the exclusion states that with respect to questions 1 through 6(e), if such claim or suit *exists,* then any claim arising therefrom is excluded from the proposed coverage.  This exclusion, as written, can be read to mean that if a claim *even exists* against an entity proposed for coverage, *then regardless of how HSUS responds to Question 3*, any claim or suit arising from such an existing claim would be excluded from proposed coverage.  This interpretation of the broadly written exclusion renders meaningless Question B.3, however, because irrespective of HSUS's disclosure of *all* prior claims against an entity proposed for coverage, the exclusion still would apply.

National Union argues that because it is not seeking to rescind coverage, whether it would have issued coverage had HSUS answered "Yes" to Question B.3 is irrelevant.  This argument is unpersuasive under the circumstances.  The exclusion only applies if HSUS had a duty to disclose specific information in response to Question B.3.  *See, e.g., Cohen*, 785 F.3d at 892 ("The Court of Appeals of Maryland has repeatedly made clear that an insurance application, as 'a condition precedent' to an insurer's reliance on it, 'must be reasonably designed to elicit from [the applicant] the information which he possesses, material to the risk.'" (*quoting Stumpf v. State Farm Mut. Auto.*

*Ins. Co.*, 252 Md. 696, 707 (1969)).  Here, it is far from clear what information HSUS was obligated to disclose in response to Question B.3 and what effect answering "Yes" would have on the decision to issue the Policy, and/or if the exclusion would apply regardless.

The Fourth Circuit recently reminded us in *Cornerstone Title & Escrow, Inc. v. Evanston Ins. Co.*, 555 F.App'x 230, 235 (4th Cir. 2014):

> In interpreting the insurance contract, we should take special care to interpret exclusion provisions narrowly. *See Megonnell v. United Servs. Auto. Ass'n*, 368 Md. 633 (2002).  "[S]ince exclusions are designed to limit or avoid liability, they will be construed more strictly than coverage clauses and must be construed in favor of a finding of coverage.  *Id.* (quotation marks omitted).  And, in all cases, the insurer bears the burden of showing that an exclusion applies.  *See Prop. & Cas. Ins. Guar. Corp. v. Beebe-Lee*, 431 Md. 474 (2013).

National Union has not provided any extrinsic or parol evidence to cure the ambiguities discussed above.[8]   *See Cheney v. Bell*

---

[8]  Plaintiffs cite deposition testimony from its purported expert, Dennis Connolly, as to his opinion regarding whether National Union still would have issued the policy even if HSUS disclosed the Feld Litigation in the application, but his opinion does not resolve the ambiguities.  (ECF No. 73, at 18). Mr. Connolly acknowledged in his deposition that any suggestion that National Union still would have issued the policy had Plaintiffs disclosed the Feld Litigation in the application would be speculative.  (*See* ECF No. 73-4, at 5, "I think that is speculation.   I speculate that they would have written the policy.")).

*Nat'l Life Ins. Co.*, 315 Md. 761 (1989) ("In the event of an ambiguity . . . extrinsic and parol evidence may be considered").

The cases which National Union cites to show that other courts have applied similar exclusions in upholding denials of coverage are factually distinct and not persuasive given the facts here.  For instance, the court in *Gluck v. Executive Risk Indem., Inc.*, 680 F.Supp.2d 406, 419 (E.D.N.Y. 2010), reviewed a *different* exclusion in an insurance application:

> The "arising from" exclusion contained in the Executive Risk application – and incorporated into the contract – states:
>
> [I]t is agreed that . . . any claim arising from any fact, circumstance, situation, transaction, event, act, error, or omission *required to be disclosed* in response to Questions 14, 15, 16, 17, or 21 is excluded from the proposed insurance.
>
> . . .  This exclusion plainly eliminates coverage for claims arising from those facts, etc. "required to be disclosed" that are not actually disclosed in response to the specified questions.

(emphasis in original).[9]

---

[9] The facts in *International Surplus Lines Ins. Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 903 (10th Cir. 1995), another case cited by National Union, also are vastly different from the ones here.  In that case, the question in the application stated: "No person proposed for insurance coverage is cognizant of any fact, circumstance or situation which said person has reason to suppose might afford valid grounds for any future claim against said person and/or the Organization except as follows[.]"  The court determined that "Question 17 of the

Based on the foregoing, ambiguities in Question B.3 and the corresponding exclusion preclude entry of summary judgment to National Union as to the individual plaintiffs.

### c. Endorsement No. 6

Next, National Union contends that Endorsement No. 6 to the Policy also precludes coverage of the individual plaintiffs. The individual plaintiffs appear to seek coverage pursuant to Insuring Agreement A of the D&O Coverage Section:

> Coverage A: Individual Insured Insurance
>
> This policy shall pay on behalf of each and every Individual Insured Loss arising from a Claim first made against such Individual Insured during the Policy Period or the Discovery Period (if applicable) and reported to the Insurer pursuant to the terms of this policy any actual or alleged Wrongful Act of such Individual Insured, except when and to the extent that the Organization has indemnified the Individual Insured. The Insurer shall, in accordance with and subject to Clause 5 of this Coverage Section, advance Defense Costs of such Claim prior to its final disposition.

(ECF No. 68-6, at 35). The D&O Coverage Section defines "Individual Insured(s)" as "a past, present or future duly elected or appointed director . . . or Employee of the

---

application is unambiguous and calls for a simple disclosure of facts indicating the probability of a covered claim." Based on the facts of that case, the court determined that any reasonable person would have been aware of the possibility of the claim. Here, the question did not ask whether any entity proposed for coverage was aware of any circumstance which may result in a future claim.

Organization, or Outside Entity Executive. Coverage will automatically apply to all new persons who become Individual Insureds after the inception date of this policy." (Id. at 36). An "Employee" is broadly defined as "any past, present or future employee of the Organization, whether such employee is in a supervisory, co-worker or subordinate position or otherwise, including any full-time, part-time, seasonal or temporary employee or volunteer of the Organization in his or her capacity as such." (Id.). Kimberly Ockene and Jonathan Lovvorn are "Employees" within the meaning of the Policy.

Endorsement No. 6 to the Policy states:

> In granting coverage under this policy, it is agreed that the Insurer has relied upon the statements and representations contained in the application for this policy . . . as being accurate and complete. All such statements and representations are the basis of this policy and are to be considered as incorporated into this policy.

> With respect to any statements, warranties and representations contained in the application, and solely with respect to the issue of whether coverage shall be afforded under this endorsement pursuant to subparagraphs (1), (2) and (3) below, no knowledge possessed by an Individual Insured shall be imputed to any other Individual Insured. *However, in the event that any of the statements, warranties or representations is not accurately and completely disclosed in the application, no coverage shall be afforded for any Claim alleging, arising out of, based upon, attributable to or in consequence of the subject matter of any incomplete or*

> *inaccurate statements, warranties or representatives with respect to the following Insureds:*
>
> *(1) any Individual Insured who knew as of the inception date of the Policy Period the facts that were not accurately and completely disclosed in the application;*
>
> *(2) any Organization to the extent it indemnifies any individual insured referenced in subparagraph (1) above; and*
>
> *(3) any Organization if any past or present chief executive officer, chief operating officer or chief financial officer of the Organization knew of such inaccurate or incomplete statements, warranties or representations,*
>
> *whether or not such Individual Insured knew that such facts were not accurately and completed disclosed in the application.*

(ECF No. 68-6, at 68) (emphases added).

Given the ambiguities in the application discussed above, there is a genuine dispute as to whether any facts were not accurately or completely disclosed in the application.

### d. "Prior Notice" Exclusion

Next, National Union argues that Exclusion 4(b) of the 2009-2010 Policy bars coverage for the Feld Litigation for the individual Plaintiffs. Exclusion 4(b) states:

> The Insurer shall not be liable to make any payment for Loss in connection with a Claim made against an Insured:
>
> (b) alleging, arising out of, based upon or attributable to the facts alleged, or to the

> same or Related Wrongful Act[10] alleged or
> contained in any Claim which has been
> reported, or in any circumstances of which
> notice has been given, under any policy of
> which this policy is a renewal or
> replacement or which it may succeed in time.

(ECF No. 68-6, at 11).   First, National Union argues that
because HSUS gave notice of the Feld Litigation to a different
insurer, Travelers, under an earlier policy issued in 2000,
Exclusion 4(b) precludes coverage for all Plaintiffs.   Secondly,
National Union argues that notice previously given by The Fund
for Animals to two other insurers – American Empire Surplus
Lines Insurance Company ("AESLIC") and OneBeacon Insurance
Company ("OneBeacon") – under earlier issued policies, also
precludes coverage under Exclusion 4(b).   (*See* ECF No. 68-1, at
27).   In sum, National Union takes the position that because the
2009-2010 Policy issued to HSUS succeeds in time to the policies
issued by Travelers, AESLIC, and OneBeacon, Exclusion 4(b)
applies and precludes coverage for all Plaintiffs.

Plaintiffs, on the other hand, interpret Exclusion 4(b) as
applying only when notice is given to another insurer under a
prior policy *before* notice is given to National Union.
Plaintiffs contend that in a March 1, 2010 letter from Roger

---

[10] A "Related Wrongful Act" is defined in the Policy as "a
Wrongful Act which is the same, related or continuous, or
Wrongful Act which arises from a common nucleus of facts.
Claims can allege Related Wrongful Acts regardless of whether
such Claims involve the same or different claimants, Insureds,
or legal causes of action." (ECF No. 68-6, at 9).

Kindler, the General Counsel of HSUS, to BB&T, HSUS concurrently notified both Travelers and National Union of the amended complaint filed by Feld Entertainment.[11]  Plaintiffs further aver that *FFA*, and not HSUS, was insured under the AESLIC and OneBeacon occurrence policies,[12] and that FFA gave notice of the Feld Lawsuit to these insurance companies in August 2011, "long *after* HSUS provided notice to National Union" in March 2010. (ECF No. 73, at 37 n.14) (emphasis added); (*see also* ECF No. 86-22, at 24-25 ("The Fund for Animals gave AESLIC notice of the 2010 *Feld* Amended Complaint in March 2011"); "In August 2011, The Fund for Animals provided the OneBeacon Insurers written notice of the 2010 *Feld* Complaint, and requested that defendants provide The Fund for Animals a defense and indemnity from the 2010 *Feld* lawsuit.")).

National Union's interpretation of Exclusion 4(b) is that whether notice was provided to another insurer under an earlier-issued policy before or after notice was given to National Union is immaterial.  National Union argues that "[n]owhere in

---

[11] Plaintiffs appear to be referencing the General Liability Notice of Occurrence/Claim that was submitted to BB&T on March 1, 2010.  (*See* ECF No. 68-15).

[12] FFA was insured by AESLIC from September 2, 2002 to September 2, 2004 under primary and excess liability policies. (ECF No. 68-22, at 21, complaint by Fund for Animals against OneBeacon and AESLIC in the Circuit Court for Baltimore City). FFA was insured by OneBeacon from May 22, 1999 to May 23, 2003. (*Id.* at 12).

Exclusion 4(b) is there any requirement that the notice to the insurer that issued a previous policy be given to that insurer before notice is given to National Union." (ECF No. 75, at 20). The plain language of Exclusion 4(b), however, precludes coverage for Loss in connection with a Claim that "*has been* reported, or in any circumstances of which notice *has been* given, under any policy of which [the National Union 2009-2010] policy is a renewal or replacement or which it may succeed in time." (ECF No. 68-6, at 11) (emphases added). A reasonable interpretation of this exclusion is that notice of the Claim under a previously issued policy had to have *preceded* notice to National Union, which Plaintiffs contend did not happen here.[13] Indeed, National Union does not advance any arguments in its reply memorandum to dispute that FFA gave notice to OneBeacon and AESLIC in 2011, after HSUS provided notice to National Union. National Union contends that "Plaintiffs' reference to the date that HSUS reported the Feld Litigation to its broker does not create an issue of fact because notice to a broker is

---

[13] Notably, in the lawsuit filed by The Fund for Animals against National Union in the Circuit Court for Montgomery County, National Union also argued that the fact that FFA gave notice of the Feld Lawsuit to AESLIC and OneBeacon under insurance policies covering 1999 through 2004 excluded FFA from coverage pursuant to Exclusion 4(b) of the 2009-2010 Policy. Judge Boynton determined that summary judgment to National Union was inappropriate on this basis, however, given FFA's evidence that HSUS "notified National Union of the Feld Lawsuit *before* Fund for Animals notified its own insurers." (ECF NO. 73-8, at 8-9).

not notice to National Union under the 2009-2010 Policy," (ECF No. 75, at 20), but it does not identify any date that it believes controls for purposes of the "prior notice" exclusion.

In *LaValley v. Virginia Sur. Co., Inc.*, 85 F.Supp.2d 740 (N.D. Ohio 2000), a case cited by National Union, the court analyzed an exclusion in an insurance policy which barred "[a]ny claim arising from any circumstance of which notice has been given under any policy in effect prior to or at the inception of the policy." *Id.* at 744. The court reasoned:

> Exclusion (f) . . . establish[es] a presumption of no coverage *where the insured has notified a previous insurer of the circumstances surrounding an insurable claim, and then later* notifies *its current insurer of a subsequent claim that is born of any of the same circumstances.* Whether the insured knew that multiple claims would be brought against it is irrelevant; under exclusion (f), so long as there are "any circumstance[s] of which notice has been given" under previous policies, claims stemming from those circumstances will be excluded.

*Id.* at 744-45 (emphasis added). In *Bancinsure, Inc. v. The Park Bank*, 318 F.Supp.2d 746 (W.D.Wis. May 13, 2004), another case cited by National Union, the court interpreted a "prior notice exclusion," which stated that the insurer "is not liable for loss in connection with 'any Claim made against the Insured Persons' that arises out of 'any Wrongful Act or any fact, circumstance or situation that has been the subject of notice

38

under any policy of insurance in effect prior to the Inception Date of this Policy.'"   *Id.* at 751.   The court held: "It is evident that the 2001 policy excludes claims made against insureds *if notice has been given previously* under any prior policy of the facts or situation giving rise to the claim." *Id.* at 752 (emphasis added).[14]   Here, Plaintiffs contend that notice to National Union was given at the same time notice was provided to Travelers of the Feld Lawsuit.

Based on the foregoing, National Union has not established that Exclusion 4(b) precludes coverage for the individual Plaintiffs.

### e. "Other Insurance" Clause

Finally, National Union contends that the 2009-2010 Policy is "excess of the 2000 Travelers Policy." (ECF No. 68-1, at 29).   Based on their initial motion and reply memorandum, it appears that National Union only lodges this argument to support

---

[14]   In *Axis Reinsurance Co. v. HLTH Corp.*, 993 A.2d 1057 (Del. 2010), the Supreme Court of Delaware analyzed a prior notice exclusion similar to the one at issue here, but as Plaintiffs argue, the facts of that case also are readily distinguishable.   The prior notice exclusion analyzed in *Axis* precluded coverage for "[l]oss[es] in connection with any Claim made against an Insured alleging, arising out of, based upon or attributable to the facts alleged, or the same or related Wrongful Acts alleged or contained in any Claim which has been reported, or in any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time." *Id.* at 1063.   In that case, however, defendant provided notice to "Program I insurers of its claims on July 21, 2005 but did not notify the Program III insurers until December 22, 2005." *Id.* at 1060.

denial of coverage to HSUS. (*See* ECF No. 68-1, at 31 ("Thus, by plain operation of the terms of the respective Other Insurance clauses of the policies, *there is no coverage for HSUS* for any amount within the limits of the 2000 Travelers policy." (emphasis added)); (*see also* ECF No. 75, at 30 ("This Court should adhere to the plain language in the Other Insurance clauses in the 2009-2010 Policy and the 2000 Travelers Policy and conclude that there is no coverage *for HSUS* for any amount within the limits of the 2000 Travelers policy.") (emphasis added)). Indeed, the letter from Travelers to HSUS, dated September 13, 2010, avers that Kimberly Ockene and Jonathan Lovvorn were not insured under the 2000 Travelers Policy:

> It is not clear to us whether the Humane Society is tendering to Travelers the defense of the Fund for Animals ("FFA") Jonathan Lovvorn and Kimberly Ockene with respect to the FEI Lawsuit. Based on the information now available to us, *it appears that neither FFA, Mr. Lovvorn nor Ms. Kimberly Ockene is an insured under any Travelers insurance policy issued to the Humane Society that is potentially triggered by the FEI Lawsuit.* As set forth more fully below, only the 2000 Travelers policies potentially respond to the FEI Lawsuit. *The information now available to us indicates that FFA, Mr. Lovvorn and Ms. Ockene had no relationship with the Humane Society during that year that would qualify them as an insured under the 2000 Travelers policies.*

(ECF No. 68-20, at 2) (emphases added).

40

The court need not decide the merits of National Union's arguments with respect to the "Other Insurance" clause in the Policy because summary judgment will be granted to National Union on the breach of contract claim as to HSUS for the reasons discussed.

**B.    Defendant's Motion to Exclude**

After moving for summary judgment, National Union again moved to exclude all expert testimony and written opinions by Dennis Connolly.  (ECF No. 74).  The court has not relied on any opinions by Mr. Connolly in adjudicating the motion for summary judgment.  Moreover, it may well be that Plaintiffs will not seek to rely on this witness later in this litigation. Accordingly, the motion will be denied without prejudice to renewal later in the litigation if necessary.

**IV.  Conclusion**

For the foregoing reasons, Defendant's motion for summary judgment will be granted in part and denied in part. Defendant's motion to exclude will be denied without prejudice. A separate order will follow.

_____
/s/
DEBORAH K. CHASANOW
United States District Judge