IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| THE HUMANE SOCIETY OF THE UNITED STATES, et al. | : | |
| v. | : | Civil Action No. DKC 13-1822 |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA. | : | |

**MEMORANDUM OPINION**

In this multi-faceted insurance coverage dispute, several matters are ready for resolution.[1]  First, Plaintiffs The Humane Society of the United States ("HSUS"), Jonathon Lovvorn, and Kimberly Ockene (collectively, the "Plaintiffs") seek leave to amend their complaint.  (ECF No. 90).  Second, the parties dispute whether Plaintiffs have satisfied – or can satisfy – their discovery obligations concerning legal defense costs being sought.  (ECF Nos. 89; 92; 93).  For the following reasons, Plaintiffs' motion for leave to amend will be denied, and the court will grant the parties 60 days of additional discovery regarding defense costs in the underlying Feld Litigation.

---

[1] Overlapping related litigation is also pending in Maryland state courts.  The parties have been notifying this court of the progress of that litigation, but it is unclear how those results affect this suit.

I.   **Plaintiffs' Motion for Leave to Amend**

   **A. Background**

A more complete recitation of the factual background can be found in the court's prior memorandum opinion on summary judgment. (*See* ECF No. 84, at 1-7). The initial complaint in this case was filed in the Circuit Court for Montgomery County, and Defendant National Union Fire Insurance Company of Pittsburgh, PA ("National Union" or "Defendant") removed the action to this court. (ECF No. 1). As currently applicable, Plaintiffs assert a claim for insurance coverage against Defendant in connection with a lawsuit filed against them by Feld Entertainment, Inc. HSUS is a national nonprofit organization dedicated to protecting animals, and Mr. Lovvorn and Ms. Ockene are employed as attorneys with HSUS. According to Plaintiffs, Defendant:

> breached the terms of the [Management Liability, Professional Liability, Crime Coverage and Kidnap and Ransom/Extortion Coverage for Non Profit Organizations, Policy No. 01-932-56-98, for the policy period June 1, 2009, to June 1, 2010 (the "2009-2010 D&O Policy")] by refusing to pay the losses that Plaintiffs may, are, or will be obligated to pay because of the Feld Litigation.

(ECF No. 2 ¶ 36). Plaintiffs also seek a declaratory judgment that Defendant is obligated to pay all losses that Plaintiffs

may become legally obligated to pay in the Feld Litigation. (*Id.* ¶ 46).

The original scheduling order set August 15, 2013, as the deadline for the amendment of pleadings. (ECF No. 11, at 2). Although the discovery deadlines were extended, the deadline to amend pleadings and add parties was not modified. A subsequent scheduling order established that the parties would complete discovery on or before October 10, 2014, and file dispositive motions by November 20. (ECF No. 62).

After discovery concluded, Defendant moved for summary judgment. (ECF No. 68). On July 30, 2015, the court issued a memorandum opinion and order granting in part and denying in part Defendant's motion for summary judgment. (ECF Nos. 84; 85). The court entered judgment in favor of Defendant on a portion of Plaintiffs' breach of contract claim, concluding that "no coverage is available for HSUS under [Coverage C of] the 2009-2010 [D&O] Policy." (ECF No. 84, at 25). Defendant's summary judgment motion was denied as to the individual plaintiffs, Mr. Lovvorn and Ms. Ockene. (*See id.* at 25-39).[2] The parties participated in telephonic conferences on August 26

---

[2]  The court determined that a genuine dispute exists regarding whether Mr. Lovvorn and Ms. Ockene are entitled to coverage under Coverage A of the 2009-2010 D&O Policy. Defendant did not move for summary judgment under Coverage B of the 2009-2010 D&O Policy, and the court's prior memorandum opinion did not address Plaintiffs' claim for coverage under Coverage B.

and September 9.   On September 8, Plaintiffs for the first time expressed their intent to seek leave to file an amended complaint.  (*See* ECF No. 86).

In response to the court's letter order confirming matters discussed during the conference call, Plaintiffs filed the pending motion for leave to amend.  (ECF No. 90).  Defendant responded in opposition (ECF No. 91), and Plaintiffs replied (ECF No. 94).  In the proposed amended complaint, Plaintiffs seek to add claims for breach of contract and declaratory judgment under two additional insurance policies that Defendant sold to HSUS: Policy No. 965-95-51, for the period January 1, 2007, to January 1, 2008 (the "2007-2008 D&O Policy"); and Professional Liability Insurance for Corporate Counsel, Policy No. 01-950-29-84, for the period June 1, 2009, to June 1, 2010 (the "Employed Lawyers Policy").  (*See* ECF No. 90-2).[3]

**B. Standard of Review**

The deadline established by the scheduling order for the amendment of pleadings was August 15, 2013, and that deadline has long since passed.  (ECF No. 11).  Consequently, Plaintiffs must do more than satisfy the liberal standard of Fed.R.Civ.P.

---

[3] According to Plaintiffs, Defendant denied coverage under the Employed Lawyers Policy on April 13, 2015.  (ECF Nos. 94, at 8; 94-2).  Plaintiffs gave notice under the 2007-2008 D&O Policy on August 24, and Defendant denied coverage on October 28.  (ECF Nos. 94, at 8; 94-1).

15(a); they must first meet the mandates of Fed.R.Civ.P. 16(b)(4), which calls for "good cause" to modify a scheduling order. *See Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298-99 (4th Cir. 2008); *Elat v. Ngoubene*, 993 F.Supp.2d 497, 519-20 (D.Md. 2014) (applying a two-prong test under Rules 16(b)(4) and 15(a) in analyzing an untimely motion for leave to amend).

"A schedule may be modified only for good cause and with the judge's consent." Fed.R.Civ.P. 16(b)(4); *see Nourison*, 535 F.3d at 298 ("[D]istrict courts require the effective case management tools provided by Rule 16. Therefore, after the deadlines provided by a scheduling order have passed, the good cause standard must be satisfied to justify leave to amend the pleadings."). The movant satisfies the good cause requirement by showing that, despite due diligence, it could not have brought the proposed claims in a reasonably timely manner. *See Montgomery v. Anne Arundel County, Md.*, 182 F.App'x 156, 162 (4th Cir. 2006); *Rassoull v. Maximus, Inc.*, 209 F.R.D. 372, 374 (D.Md. 2002); *Potomac Elec. Power Co. v. Elec. Motor Supply, Inc.*, 190 F.R.D. 372, 375 (D.Md. 1999) ("Properly construed, 'good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts." (citation and internal quotation marks omitted)). The factors courts consider in determining good cause are the "danger of prejudice to the non-moving party, the length of delay and its potential impact on

judicial proceedings, the reason for the delay, and whether the movant acted in good faith." *Tawwaab v. Va. Linen Serv., Inc.*, 729 F.Supp.2d 757, 768-69 (D.Md. 2010) (citation and internal quotation marks omitted).  As Judge Williams explained:

> Courts in the [United States Court of Appeals for the] Fourth Circuit deny leave to amend a complaint past the deadline established by a scheduling order where the moving party has been careless in developing his claims or where he has failed to satisfactorily account for his failure to do so.  *Compare Whichard v. Specialty Restaurants Corp.*, 220 F.R.D. 439, 441 (D.Md. 2004) (denying plaintiff's motion to join an additional defendant five months after the court imposed deadline because plaintiff had ample notice before the deadline that the original defendant might not be the right party) with *Long v. Blair*, No. 2:09-CV-00349, 2010 WL 1930220 (S.D.W.Va. May 12, 2010) (holding that good cause existed where the plaintiff did not establish a sufficient evidentiary basis to support new claims until after the deadline for amending his complaint and moved to amend immediately after the new evidence came to light).

*Id.* at 769.  The dictates of Rule 16(b) are not to be taken lightly, as "a judge's scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Potomac Elec.*, 190 F.R.D. at 375 (citation and internal quotation marks omitted).

If Rule 16(b) is not satisfied, there is no need to consider Rule 15(a). *See Nourison*, 535 F.3d at 299; *Marcum v. Zimmer*, 163 F.R.D. 250, 254 (S.D.W.Va. 1995) ("[T]he focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end."). Once the movant has met the burden of showing good cause, however, the inquiry shifts to Rule 15(a), which provides that "court[s] should freely give leave [to amend a pleading] when justice so requires." Fed.R.Civ.P. 15(a)(2). Denial of leave to amend is appropriate "*only when* the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (emphasis in original) (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)). Leave to amend may be denied as futile "if the proposed amended complaint fails to satisfy the requirements of the federal rules," including federal pleading standards. *Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011) (quoting *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008)).

## C. Analysis

Plaintiffs' proposed amendments add claims for breach of contract and declaratory judgment under two additional insurance

policies that Defendant sold to HSUS, the 2007-2008 D&O Policy
and the Employed Lawyers Policy.   In their motion, Plaintiffs
addressed only the liberal standards of Rule 15(a) regarding
amendments to pleadings.   According to Plaintiffs:

> The [c]ourt should grant Plaintiffs'
> motion for leave to amend because: (1)
> Plaintiffs have a good-faith basis to add
> claims under the 2007-2008 D&O Policy and
> the Employed Lawyer[s] Policy because
> [Defendant] has breached . . . its coverage
> obligations under these policies;[4] (2)
> [Defendant] will not be prejudiced by
> amendment; and (3) amendment is not futile.
> . . . [I]n granting [Defendant] summary
> judgment [on Plaintiffs'] claim for coverage
> under Coverage C . . . in the 2009-2010 D&O
> Policy, the [c]ourt opened the prospect for
> coverage under the 2007-2008 D&O Policy,
> causing Plaintiffs to give notice under [the
> 2007-2008 D&O Policy].

(ECF No. 90-1, at 4-5).   Plaintiffs further assert that
"granting Plaintiffs' motion to amend will promote interests of
judicial economy by allowing disputes over coverage under all
three [p]olicies to be resolved in one litigation, thereby
avoiding costly and unnecessarily duplicative litigation and the
possibility of inconsistent results."   (*Id*. at 5).   In the
pending motion, however, Plaintiffs neglect to consider Rule

---

[4] Plaintiffs argue that they have a good-faith basis for
asserting additional claims under the 2007-2008 D&O Policy and
the Employed Lawyers Policy.   Plaintiffs misapprehend the
federal standards established by Rule 15(a), as courts should
deny leave to amend a pleading when there has been bad faith on
the part of the movant.   *See Edwards*, 178 F.3d at 242.

16(b) and their burden to show good cause to modify the existing scheduling order.

According to Defendant, Plaintiffs' failure to address good cause under Rule 16(b) in their pending motion is alone sufficient to warrant denial. Defendant argues that:

> Plaintiffs would not have been able to meet their burden . . . because they cannot show that they were diligent in seeking leave to amend in light of their admission that they believed, as far back as 2010, that the 2007-2008 D&O Policy and the . . . Employed Lawyers Policy covered the Feld Litigation. Despite this belief, Plaintiffs waited more than two years after the [s]cheduling [o]rder deadline for amendments, close to a year after the 15-month discovery period ended, and nearly two months after this [c]ourt decided [Defendant's] dispositive motion, to file a [m]otion for [l]eave to [a]mend their complaint.

(ECF No. 91, at 1). Assuming *arguendo* that Plaintiff can satisfy Rule 16(b), Defendant contends that Rule 15(a) mandates denial of Plaintiffs' motion because Plaintiffs acted in bad faith and, furthermore, because the proposed amended complaint would unfairly prejudice Defendant. (*Id.* at 2).

The Rule 16(b) "good cause" inquiry is focused on the movant's diligence. Here, it was only after Defendant identified Plaintiffs' failure even to address Rule 16(b) that Plaintiffs presented arguments regarding good cause. Because Plaintiffs' contentions appear for the first time in their reply

brief, the court is inclined not to consider them.  *See Clawson v. FedEx Ground Package Sys., Inc.*, 451 F.Supp.2d 731, 734 (D.Md. 2006) ("The ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered.").   Not only does the careless lawyering by Plaintiffs' counsel warrant this treatment, it is also a sign of a lack of diligence — without which the court is hard-pressed to conclude that good cause exists to modify the scheduling order.  *See Rassoull*, 209 F.R.D. at 374.

Even considering the arguments advanced in the reply brief, Plaintiffs nonetheless fail to establish good cause for modifying the scheduling order under Rule 16(b).  As noted, the factors courts consider in evaluating good cause are the "danger of prejudice to the non-moving party, the length of delay and its potential impact on judicial proceedings, the reason for the delay, and whether the movant acted in good faith."  *Tawwaab*, 729 F.Supp.2d at 768-69 (citation and internal quotation marks omitted).   In their motion, Plaintiffs must demonstrate that the reasons for their delay justify a departure from the rules set by the court in the scheduling order.  According to Plaintiffs, "[t]he facts underpinning the claims that Plaintiffs now seek to add to their complaint – claims for coverage under [Defendant's] 2007-2008 D&O Policy and Employed Lawyers Policy – did not come

to ripen . . . until long after the August 15, 2013 deadline for amendment had passed." (ECF No. 94, at 6). Because Defendant denied coverage under both the Employed Lawyers Policy on April 13, 2015, and the 2007-2008 D&O Policy on October 28, 2015, Plaintiffs contend that they could not have amended their complaint before the scheduling order deadline. (See *id.* (citing *Tawwaab*, 729 F.Supp.2d at 768 ("The Fourth Circuit has noted that a finding of 'good cause' is justified under Rule 16(b) where at least some of the evidence needed for a plaintiff to prove his or her claim did not come to light until after the amendment deadline." (citation omitted)))).

Here, Plaintiffs were aware of the two additional policies before the scheduling order deadline, before discovery concluded, and before the court issued its summary judgment memorandum opinion and order. Plaintiffs filed the complaint on May 23, 2013, demanding coverage under only the 2009-2010 D&O Policy; they deliberately elected not to include any claim under either the 2007-2008 D&O Policy or the Employed Lawyers Policy in the complaint. The court's August 15, 2013 scheduling order deadline for amending the pleading was not extended, and discovery concluded on October 10, 2014. Defendant denied coverage to Plaintiffs under the Employed Lawyers Policy on April 13, 2015, while the summary judgment motion was pending; Plaintiffs only gave notice under the 2007-2008 D&O Policy on

August 24, and Defendant denied coverage on October 28.[5]  On September 8, Plaintiffs for the first time expressed their intent to seek leave to file an amended complaint. (*See* ECF No. 86).  The underlying facts were long known to Plaintiffs, and Plaintiffs could have included some claims under the 2007-2008 D&O Policy and the Employed Lawyers Policy when they commenced this action, and certainly before the expiration of the scheduling order deadline.[6]  Instead, they waited until more than two months following the summary judgment opinion to seek leave to amend the complaint.  *See Howard v. Inova Health Care Servs.*, 302 F.App'x. 166, 181 (4th Cir. 2008) ("[A] motion to amend should be made as soon as the necessity for altering the

_____

[5] There is some discrepancy as to the date on which Plaintiffs gave notice under the 2007-2008 D&O Policy. Plaintiffs' reply brief includes a "Timeline of Key Dates" that identifies August 24 as the date on which Plaintiffs gave notice. (ECF No. 94, at 8).  According to Defendant's denial letter attached by Plaintiffs, however, Defendant wrote: "While it appears that the Feld Litigation was a Claim first made against the Fund for Animals ("FFA")], and thus against the Organization, during the policy period of the [2007-2008 D&O Policy], it was not reported to [Defendant] . . . until August 25, 2015, more than seven years after the policy period ended." (ECF No. 94-1, at 5).

[6] Here, for instance, Plaintiffs' motion for leave to file an amended complaint was filed on September 28, 2015, approximately one month after they gave notice under the 2007-2008 D&O Policy and one month before Defendant formally denied coverage.  Plaintiffs add claims for breach of contract and declaratory relief under the 2007-2008 D&O Policy in their proposed amended complaint. (*See* ECF No. 90-2, at 20).  In their motion, Plaintiffs explain that they "anticipate that [Defendant] will deny coverage under [the 2007-2008 D&O Policy]." (ECF No. 90-1, at 3).

pleading becomes apparent." (quoting *Deasy v. Hill*, 833 F.2d 38, 41 (4th Cir. 1987))).  Lack of diligence and carelessness are the "hallmarks of failure to meet the good cause standard."  *W. Virginia Hous. Dev. Fund v. Ocwen Tech. Xchange, Inc.*, 200 F.R.D. 564, 567 (S.D.W.Va. 2001).  Plaintiffs offer no justification for their substantial delay in seeking to include claims under the 2007-2008 D&O Policy and the Employed Lawyers Policy, and the potential to pursue such claims came as no surprise to Plaintiffs.  They had ample time during the course of this litigation to have pursued coverage under the additional policies.  *See Crouch v. City of Hyattsville, Md.,* No. DKC-09-2544, 2012 WL 718849, at *4 n.7 (D.Md. Mar. 5, 2012) ("[T]o amend his complaint, Plaintiff need not have waited until he had all the evidence he needed to prove his claims.").  Accordingly, because Plaintiffs failed to establish that they exercised diligence in seeking leave to amend the complaint, they have not satisfied Rule 16, and their motion will be denied.

Moreover, the court may also consider the danger of prejudice to Defendant stemming from an amendment at this juncture.  "When considering a motion for leave to amend, 'the court may take into account the stage of the proceedings,' such as whether the parties have completed discovery."  *Elat*, 993 F.Supp.2d at 520 (quoting *Skinner v. First Am. Bank of Virginia*, 64 F.3d 659, 1995 WL 507264, at *2 (4th Cir. 1995) (unpublished

table opinion)).   By failing to move for leave to amend until after the court ruled on Defendant's summary judgment motion, Plaintiffs have deprived Defendant of the opportunity to "conduct any necessary follow-up discovery . . . .   If leave were granted, [Defendant] would also be prejudiced because of the obvious delay and because of the time and expense already incurred in discovery and preparation of a summary judgment motion, and the need for further discovery." *Hemphill v. ARAMARK Corp.*, No. 1:12-CV-01584-ELH, 2014 WL 1248296, at *26 (D.Md. Mar. 25, 2014), *aff'd*, 582 F.App'x 151 (4th Cir. 2014); *see Hammer v. Peninsula Poultry Equip. Co.*, No. RDB-12-1139, 2013 WL 97398, at *4 (D.Md. Jan. 8, 2013) ("Undue prejudice to the opposing party may result from an amendment that would substantially change the nature of the case or require the opposing party to invest more time and expense in new litigation preparation." (citation omitted)).   Here, Plaintiffs filed the pending motion nearly one year after discovery concluded and approximately two months after the court decided Defendant's summary judgment motion.   Such a delay prejudices Defendant, which rightly argues that "Plaintiffs' proposed new claims would involve development of . . . different defenses, potentially including the designation of additional experts by [Defendant]." (ECF No. 91, at 13 n.8).

14

The remaining arguments Plaintiffs advance in support of their motion do not address Rule 16(b)'s standard of good cause. First, Plaintiffs contend that the court's September 9, 2015 letter order extended the deadline for pleading amendments by establishing a briefing schedule for the pending motion. (*See* ECF No. 94, at 2-5). Plaintiffs' argument is unavailing, as it misinterprets the establishment of a briefing schedule as a modification of the scheduling order. In permitting Plaintiffs to file the pending motion, the court did not relieve Plaintiffs of their burden to satisfy the dictates of Rule 16(b) and show good cause for modifying the existing scheduling order. *See Reyazuddin v. Montgomery Cty., Md.*, No. DKC-11-0951, 2012 WL 27241, at *6 (D.Md. Jan. 4, 2012). Nowhere in the September 9 letter order did the court purport to adjust the scheduling order or waive Plaintiffs' obligation to comply with the federal rules governing pleading amendments. Plaintiffs' additional argument that granting leave would serve the interests of judicial economy similarly fails to address the proper standard under Rule 16(b). Plaintiffs assert that "granting [their] motion to amend will promote interests of judicial economy by allowing disputes over coverage under all three [p]olicies to be resolved in one litigation, thereby avoiding costly and unnecessarily duplicative litigation and the possibility of inconsistent results." (ECF No. 90-1, at 5; *see* ECF No. 94, at

10-11).    The  interests  of  judicial  economy  do  not  demonstrate
diligence  and  good  cause  under  Rule  16(b).   *See Reyazuddin*,  2012
WL 27241, at *6.

Because  Plaintiffs  lack  good  cause  for  modifying  the
scheduling  order  under  Rule  16(b),  their  remaining  arguments  in
support  of  leave  to  amend  under  Rule  15  need  not  be  considered.[7]
Plaintiffs'  motion  will  be  denied,  and  the  complaint  will  remain
the  operative  pleading,  subject  to  the  court's  opinions  and
orders  previously  issued  in  this  case.

## II.  Discovery Regarding Legal Defense Costs

### A. Background

The  court  also  requested  that  the  parties  submit  memoranda
"regarding  whether  Plaintiffs  should  be  permitted  to  produce
remaining  discovery  disclosures  and  which  party  bears  the  burden
of  demonstrating  the  reasonableness  of  expenses."   (ECF  No.  88;
*see*  ECF  Nos.  89;  92;  93).   Although  not  styled  as  a  motion,  in
effect,  Plaintiffs  seek  an  extension  of  discovery  in  order  to
supplement  responses,  and  Defendant  seeks  sanctions  for
Plaintiffs'  discovery  failings.

---

[7]  Although  the  court  need  not  analyze  Plaintiffs'  motion
under  Rule  15(a),  it  should  be  noted  that  denial  of  leave  to
amend  is  appropriate  when  the  amendment  would  prejudice  the  non-
moving  party.   *Edwards*,  178  F.3d  at  242.   Here,  the  court
determines  that  Defendant  would  be  prejudiced  by  Plaintiffs'
proposed  amendments.

The dispute stems from the legal fees and expenses incurred by Plaintiffs in the underlying Feld Litigation. The complaint only requests damages in excess of $75,000.00, but does not particularize further. (ECF No. 2, at 9-11). At some point during discovery, Plaintiffs produced documents showing that approximately $178,000.00 of defense costs were paid. (*See* ECF Nos. 89, at 7; 92, at 6). More recently, Plaintiffs seek to supplement their responses to include $938,102.61 in additional fees and expenses. (*See* ECF No. 89, at 6-10). Subsumed within this issue is a dispute over which party bears the burden of proof - either production or persuasion - on the reasonableness of the costs.

Plaintiffs somewhat blithely contend that they satisfied their discovery obligation because the legal billing documents were provided to Defendant via Donna Roberts, a claims-handling agent, in reference to a different insurance policy. (*See id.* at 20-21). That assertion is easily rejected, although an assessment of any prejudice to Defendant necessarily must acknowledge that fact. Moreover, Plaintiffs stretch the relevant case law too far when they state that Defendant bears the burden to challenge those bills for reasonableness in the first instance. On the other hand, given the procedural posture of this case, Plaintiffs' failure to provide discovery in a timely fashion will not preclude their claim altogether.

Rather, a brief period of follow-up discovery will remedy any deficit.

### B. Standard of Review

Defendant propounded interrogatories and requested the production of documents supporting Plaintiffs' claim for damages, and specified attorney invoices, and proof of payments related to the Feld Litigation. (*See id.* at 7; ECF No. 92, at 6-9). Under Fed.R.Civ.P. 26(e), a party is required to supplement disclosures in a timely fashion:

> (1) In General.  A party who has made a disclosure under Rule 26(a) - or who has responded to an interrogatory, request for production, or request for admission - must supplement or correct its disclosure or response:
>
> > (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
> >
> > (B) as ordered by the court.

Failure to supplement with newly-obtained relevant information subjects a party to sanctions under Rule 37(c):

> (1) Failure to Disclose or Supplement.  If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially

justified or is harmless.  In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:

>    (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;

>    (B) may inform the jury of the party's failure; and

>    (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

The broad discretion afforded to district courts under Rule 37(c) is to be guided by several factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence. *S. States Rack And Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003).

**C. Analysis**

**1. Supplemental Discovery**

On December 23, 2013, Plaintiffs produced invoices from Wilmer Cutler Pickering Hale and Dorr LLP ("WilmerHale") for work through August 2013 in excess of $178,000.00.  No further formal supplementation has been made.  Defendant asserts that it inquired in e-mails and voicemail messages whether Plaintiffs

intended to supplement those responses. (ECF No. 92, at 9). Plaintiffs state, however, that Defendant knew that there would be ongoing costs and it should have deposed the WilmerHale lawyers to obtain such information. (ECF No. 89, at 6-8). Plaintiffs also contend that the invoices provided to Ms. Roberts, a claims handler for a different policy, on March 10, 2014, and April 2, 2014, for an additional $781,030.77, provided notice. (*Id.* at 8-10).

In Maryland, "[t]he party seeking an award of fees must prove the amount of attorneys' fees under the standards ordinarily applicable for proof of contractual damages." *Bd. of Trustees, Cmty. Coll. of Baltimore Cty. v. Patient First Corp.*, 444 Md. 452, 485 (2015) (citing *Bankers & Shippers Ins. Co. of New York v. Electro Enterprises, Inc.*, 287 Md. 641, 661 (1980)). Plaintiffs must concede that, in order to meet their burden at trial, they will have to produce evidence of the costs themselves. It is difficult to understand, then, how Plaintiffs can contend that they somehow do not have to produce those records in discovery in this litigation. In apparent agreement with that proposition, Plaintiffs propose that they be allowed to supplement discovery with those invoices already sent to Ms. Roberts and any additional invoices incurred while Defendant's motion for summary judgment was briefed. (ECF No. 89, at 25).

Accordingly, Plaintiffs will be ordered to supplement discovery concerning defense costs within 7 days.

### 2. Plaintiffs' Ultimate Burden of Proof

Plaintiffs bear the burden to offer sufficient evidence of the amount, necessity, and reasonableness of defense costs sought. In the cases Plaintiffs cite in their papers, the moving parties produced more than the bare records themselves to demonstrate damages in the form of defense costs. For instance, after a bench trial at which the plaintiff called two fact, but no expert, witnesses, Judge Bennett noted, "Maryland law governs the reasonableness of the attorney's fees and expenses in this case. The burden under Maryland law to prove the reasonableness and necessity of attorney's fees and expenses rests on [the plaintiff], and [it] must prove its claim for attorney's fees with competent evidence." *Indus. Enterprises, Inc. v. Penn Am. Ins. Co.*, No. RDB-07-2239, 2009 WL 9057727, at *7 (D.Md. June 12, 2009) (citations omitted), *amended*, No. RDB-07-2239, 2009 WL 3647372 (D.Md. Nov. 3, 2009), *and rev'd and remanded*, 637 F.3d 481 (4th Cir. 2011). Judge Bennett continued:

> The professional relationship between [the plaintiff] and Patton Boggs also establishes the reasonableness of the legal expenses. Because Penn America breached its duty to defend, it did not provide any billing guidelines to [the plaintiff] (*e.g.* limits on recoverable fees and expenses, format of billing, etc.) and it did not object to [the

> plaintiff's] choice of counsel.  Meanwhile,
> during this time period, [the plaintiff] was
> paying its legal bills despite its virtual
> insolvency.   [The plaintiff's president]
> also testified that he was very pleased with
> the legal work performed by Patton Boggs,
> and their ten-year professional relationship
> clearly supports his testimony.  Under these
> circumstances, the payment of actual defense
> costs by [the plaintiff] is strong evidence
> that such costs are reasonable as a matter
> of law.  *See Imgarten v. Bellboy Corp.*, 383
> F.Supp.2d 825, 836 (D.Md. 2005).

*Indus. Enterprises, Inc.*, 2009 WL 9057727, at *9.

In *Imgarten*, a former employee sought attorney fees and costs against his employer after asserting a claim under the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl. § 3-501 *et seq*.  Again, after a trial, the court reasoned:

> The starting place is a calculation of the
> number of hours worked times the hourly
> rate.  From the inception of the litigation
> to the hearing on, and briefing of, the
> post-trial motions, Imgarten's attorneys
> worked a total of 4,917 hours and billed
> Imgarten $916,681.  While this sum is hefty,
> it is reasonable in terms of the litigation
> as a whole.
>      . . . Imgarten paid his legal fees and
> expenses as they accrued.  His attorneys'
> bills are not, therefore, abstract invoices
> that have piled up, unpaid, year after year.
> The invoices submitted by Imgarten's
> attorneys represent marketplace billing
> decisions, and Imgarten, by paying them, has
> attested to their reasonableness.

*Imgarten*, 383 F.Supp.2d at 836 (internal footnotes omitted). Thus, Judge Bennett's use of the phrase "as a matter of law"

should not be interpreted as stating that the fact that bills are paid is conclusive on the issue.

Also instructive is *Patient First Corp.*, 444 Md. at 486-87 (citations and footnotes omitted), where the absence of detail in the records was fatal to the claim:

> It is likely well within the discretion of a trial court to award fees based on detailed billing statements supported by the judgment of an experienced corporate counsel who had judged the bills to be reasonable and necessary to the company's defense when he authorized their payment. But the complete redaction of all description of the services rendered in the billing statements renders the court's determination here an act of faith rather than of discretion. This was not a redaction of a few isolated items that might be sensitive or privileged, but the wholesale elimination of all descriptions of the services rendered by the law firm. In the absence of any description of the services rendered, all one reviewing the report is left to do is to check the arithmetic. No explanation was offered at trial for the redaction of this information. Nor could we find anything in the record that might explain it.
>
> Undoubtedly, a conscientious general counsel would have carefully scrutinized the redacted information about the work performed to assess whether it was reasonable for his company to pay the fees that were billed. A court charged with making a fee award must make a similar judgment as to fees — whether it is reasonable for an opposing party to be obligated to pay them. While it is certainly not necessary for the court to fly-speck the bill, without access to the redacted portion of the bill, it would be difficult for the court to give conclusive weight to the opinion of [the plaintiff's]

> General Counsel, which itself was likely
> based on the missing information.  And it
> seems only fair that the opposing party
> would have at least the opportunity to point
> out to the court anything it deemed
> questionable.

Plaintiffs must, then, produce sufficient evidence of the amount of defense costs sought, as well as the necessity and reasonableness thereof.  It may not be essential to produce expert testimony, but something more than bare, sparse records is required.  To date, Plaintiffs have produced only some of the billing records in discovery, and it is not even apparent from those records that they contain the requisite detail. Plaintiffs certainly have not produced the records for the remaining amounts sought; once they do, it will be possible to examine their completeness.

Plaintiffs contend that they "are not required . . . to show in the first instance that the defense costs they paid and [] for which they seek recovery from [Defendant] were 'reasonable' or 'necessary' to the defense of the Feld Litigation."  (ECF No. 89, at 13).  The cases cited by Plaintiffs, however, either concern legal issues distinct from those presented here or involve factual situations that make them inapposite.  For example, *Port E. Transfer, Inc. v. Liberty Mut. Ins. Co.*, 330 Md. 376 (1993), addresses the reasonableness of a settlement agreement negotiated by the insurer.  There,

after the insurer settled underlying claims against the insured, the insured refused to pay adjusted policy premiums – which had increased after the settlements – and the insurer brought suit for breach of contract.   The insured denied liability, arguing that the insurer's settlements were unreasonable and not made in good faith.   *Id.* at 378-80.   In effect, the insured challenged the reasonableness of the settlement in order to defend against the insurer's breach of contract action.   The Maryland Court of Appeals held:

> [I]n a case such as this, although the ultimate burden of proof of its [breach of contract] claim remains at all times with the insurer, the burden of production of evidence of violation by the insurer of an implied condition of good faith is upon the insured.   We believe this allocation of the burden of production will provide adequate protection for the party claiming bad faith, but will not unnecessarily burden the insurer or the court with protracted proceedings and unnecessary production of evidence concerning matters not legitimately at issue.

*Id.* at 386.

Similarly, *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Porter Hayden Co.*, No. CCB-03-3408, 2014 WL 1320025, at *4 (D.Md. Mar. 31, 2014), concerns the reasonableness of settlement agreements negotiated by the insured after the insurers refused to defend.   The insured resolved claims against it, and the

insurers then challenged the reasonableness of the settlements.

Judge Blake concluded:

> [The insurers] have the initial burden of
> production, such that they must produce
> sufficient evidence to raise a triable issue
> with regard to the reasonableness of
> settlements.  If the Insurers satisfy their
> burden of production, then [the insured] has
> the ultimate burden of persuasion to show
> the settlements are reasonable.
> Accordingly, to the extent that [the
> insurers'] motion for summary judgment seeks
> a ruling that they may challenge the
> reasonableness of the Trust's settlements
> and that [the insured] bears the ultimate
> burden of persuasion on reasonableness, it
> will be granted.

*Id.* at *4 (citations omitted).  Both cases cited heavily by

Plaintiffs address affirmative defenses challenging the

reasonableness of settlement agreements – not the recovery of

defense costs.

This case is different.  The issue of reasonableness is not

a true affirmative defense here; rather, it is an assertion by

Defendant that for at least some of the legal defense costs

sought, Plaintiffs will not be able to carry their burden as

outlined above.  *See* 61A Am.Jur.2d Pleading § 300 (2016) ("[A]

matter that merely negates an element of the plaintiff's *prima

facie* case is not an affirmative defense.").  Discovery will

allow the parties to explore the other side's factual positions,

and Plaintiffs will have to produce evidence of the amount of

the legal costs, as well as their necessity and reasonableness.

Defendant will be free to challenge that evidence, and the ultimate burden of proof will remain with Plaintiffs.

## III. Conclusion

For the foregoing reasons, Plaintiffs' motion for leave to amend will be denied.  The parties will have 60 days to conduct follow-up discovery regarding defense costs.  A separate order will follow.

           /s/
DEBORAH K. CHASANOW
United States District Judge
